## THE LARIMER.

(District Court, E. D. Pennsylvania.   December 7, 1909.)

### No. 53.

SEAMEN (§ 21*)—SHIPPING ARTICLES—"FINAL PORT OF DISCHARGE."

Under shipping articles signed in New York for service on the vessel during a voyage to Port Arthur, Tex., "and back to final port of discharge, * * * with liberty to call at intermediate ports," where she loaded a cargo of oil at Port Arthur, in part for Philadelphia and in part for New York, the latter, as the port where she was completely discharged of her cargo, was the "final port of discharge," and the action of the seamen in leaving the vessel at Philadelphia after her partial discharge there, was in violation of the contract, and amounted to desertion, which forfeited their right to wages.

[Ed. Note.—For other cases, see Seamen, Cent. Dig. §§ 92–110; Dec. Dig. § 21.*]

In Admiralty. Suit by John Oegelsel and others against the steamship Larimer. Libel dismissed.

Joseph Hill Brinton, for libelants.
Robert W. Archbald, Jr., for respondent.

J. B. McPHERSON, District Judge. This is a libel brought by several seamen to recover wages from the steamship Larimer. The facts have been agreed upon by the parties and are as follows:

"(1) That each and all of the libelants hereinafter named, on November 25 and 26, 1905, at the port of New York, signed shipping articles to serve as mariners on board the steamer Larimer, whereof one L. G. Johnson was master; and a true copy of said shipping articles is annexed to and made part of this stipulation and marked 'Exhibit A.'

"(2) That on said dates the libelants went on board of the said steamer, and entered into her service, and remained upon her discharging their respective duties under said articles; and the term of service and amount of wages earned by each of the libelants, respectively (except so far as the same may be forfeited under the law by reason of the other facts herein set forth), are as follows: [Here follows list of claims.]

"(3) That thereafter the said steamer proceeded on her voyage from the port of New York to Port Arthur, Tex., and at Port Arthur, Tex., under the direction of her owner and her master, was loaded with a cargo of oil in bulk and in barrels, consigned from Port Arthur, Tex., in part to the port of Philadelphia, and in part to the port of New York. Thereafter in due course the said steamer proceeded under the command of her master to the port of Philadelphia, and there discharged that part of her cargo consigned to said port, and upon the discharge of the same proceeded under the command of her master to the port of New York, where she discharged the remaining part of her cargo. The total cargo consisted of 1,244,575 gallons in bulk and 696 barrels, of which 994,720 gallons and 300 barrels were delivered in Philadelphia, and 251,257 gallons and 396 barrels were delivered in New York.

"(4) That at the port of Philadelphia the libelants on December 27, 1905, being the time set forth above as fixing the completion of their term of service, left the said steamer without the consent and against the orders of her master and officers, and did not further perform service on board of her. The said action of the libelants was entered at the time as a desertion in the logbook of the said steamer.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

"(5) If the court be of opinion that the libelants were entitled under the facts above stated to leave the said steamer and their employment at the port of Philadelphia, then a decree shall be entered in favor of the libelants for the sums respectively set opposite their names above, with interest and costs; but if the court shall be of opinion that under the facts above stated the libelants were not justified in leaving the said steamer and their employment at the port of Philadelphia, and that their conduct in doing so amounted to desertion of the said steamer, and that therefore by reason of the provisions of said shipping articles, or by reason of the laws of the United States and this court, the libelants have forfeited their wages, then a decree shall be entered for the respondent dismissing the said libel, with the costs."

The relevant provisions of the shipping articles are as follows:

"We, the undersigned, crew of the steamship Larimer, * * * now bound from the port of New York to Port Arthur, Tex., and back to a final port of discharge north of Hatteras, and, if so desired by the master —————— other voyages completing ————— voyage, with liberty to call at intermediate ports, do agree that, in consideration of the monthly wages against the name of each member of the crew hereunder set, they severally shall and will perform the above-mentioned voyage or voyages. * * * And it is further agreed that in case of desertion * * * the wages are to cease. * * * And it is further agreed that none of the crew shall demand or be entitled to his wages, or any part thereof, until the completion of this agreement."

The question for decision is whether, under these articles and the stipulated facts, Philadelphia or New York was the "final port of discharge." As it seems to me, only one answer can properly be given. Philadelphia was in fact the first port of discharge, not the final port; and the articles not only contain nothing to override this fact—as by forbidding the ship to have more than one port of discharge—but there is a positive provision that she is to have "liberty to call at intermediate ports." The port of final discharge means, I think, the port at which the vessel is completely relieved of her cargo and thus becomes ready for another venture; and the phrase seems to imply clearly that there may be other ports of prior and partial discharge. This construction accords with the purpose of hiring seamen for a voyage, and not for a specified time. They are to serve the ship until the object of the voyage is accomplished, namely, the carriage and unloading of the cargo; and this object is not accomplished until all of the cargo has been taken out of her holds and put on shore. Of course, the terms of a particular agreement may modify this rule, and extreme cases may arise in which it would be inequitable to enforce it strictly; but in a case such as is now presented, where the cargo was partially discharged at one port, while a considerable fraction remained for discharge at another port, and no question of the ship's good faith is involved, I think that the second port must be regarded as within the articles. In United States v. Barker, Fed. Cas. No. 14,516, Mr. Justice Story, sitting at circuit, had occasion to construe the words in question, and he instructed the jury as follows:

"The fact that the destination was by the original instructions of the owner to Boston does not necessarily make it the port of discharge. 'Port of destination' and 'port of discharge' are not equivalent phrases. To constitute a port of destination a port of discharge, some goods must be unladen there, or some act done to terminate the voyage there. But here the words are 'final port of discharge,' so that the owner had a right to order the ship from port to port, until there was a final discharge of the whole cargo."

See, also, Moore v. Taylor, 1 A. & E. 25 (28 E. C. L. 22); 9 Am. & Eng. Enc. of Law (2d Ed.) 464; 19 Am. & Eng. Enc. of Law (2d Ed.) 974 (e).

In my opinion, therefore, the seamen were not justified in quitting the vessel at Philadelphia, and accordingly their libel must be dismissed, with costs.