THE VELMA L. HAMLIN.

ST. CLIARZ et al. v. SWEENEY et al.
No. 2884.

Circuit Court of Appeals, Fourth Circuit.
May 10, 1930.

Jacob L. Morewitz, of Newport News, Va., for appellants.

J. W. Eggleston, of Norfolk, Va. (Vandeventer, Eggleston & Black, of Norfolk, Va., on the brief), for appellees.

Before PARKER and NORTHCOTT, Circuit Judges, and McCLINTIC, District Judge.

PARKER, Circuit Judge.

On September 17 and 18, 1928, at Newport News, Va., four seamen, St. Cliarz, Franklin, Riely, and Daniel, by name, signed articles for a voyage on the schooner Velma L. Hamlin, which voyage was described in the articles as "from the port of Newport News, to Bangor, Maine, and such other ports and places as the master may direct, and back to a final port of discharge in the United States, for a term of time not exceeding three calendar months." The schooner was loaded with coal, and on September 25th sailed for Bangor, where she arrived on the afternoon of October 7th. Early the next morning fire broke out on the schooner, and completely destroyed the forecastle, the galley, and the engine room, and rendered the vessel totally unfit for further navigation until she could be repaired. The cargo of coal was not damaged, however, and, after the fire was extinguished, it was unloaded.

As a result of the fire, the schooner was unable to sail, but, after the cargo was discharged, a tug was employed, and she was towed to the owner's shipyard at Booth Bay, Me., a distance of about 200 miles, where she arrived on Sunday, October 14th. On the next day the master paid the crew their wages in full and discharged them. The vessel was laid up undergoing repairs until November 28th, and then, without taking on a cargo, proceeded to Hampton Roads.

At the time their wages were paid to them at Booth Bay, none of the seamen named objected to being paid off or claimed any wages in addition to the amount paid them. None except Riely raised any question as to transportation, and all signed receipts acknowledging payment in full and releasing the vessel from further liability of any sort. Arrived in Newport News, however, they filed a libel against the vessel claiming damages for the destruction of personal effects in the fire which damaged the vessel, damages for wrongful discharge, and double wages under Rev. St. § 4529 (46 USCA § 596), for failure to pay such damages promptly. The learned District Judge held that there was no liability on the part of the vessel for the destruction of personal effects by fire, and no liability for double wages under Rev. St. § 4529, but that each of the seamen was entitled to recover the cost of his transportation from Booth Bay to Newport News and the equivalent of three days' pay, to cover the time required for transportation. From this decree the seamen appealed, claiming that they were entitled as damages to the wages that they would have earned had the schooner taken on another cargo and returned to Newport News for discharge, and that they were entitled to double wages under Rev. St. § 4529, for delay in paying same to them. No contention is made here with respect to the personal effects claimed to have been lost in the fire.

The seamen are clearly not entitled to anything in addition to what was allowed them by the court below. The voyage for which they had shipped was completed when the cargo was discharged at Bangor. U. S. v. Barker, Fed. Cas. No. 14,517; The Edwin (D. C.) 23 F. 255, 256; The Larimer (D. C.) 174 F. 429, 430. This being the "final port of discharge," they were under no obligation to proceed further with the vessel, nor was she under obligation to employ them further. They did, however, continue with her while she was being towed to Booth Bay for repairs, and for this they were entitled to wages, which were paid to and accepted by them without protest. There is grave doubt as to whether they were entitled to the allowance made them by the court below; but, as the owner does not contest the allowance before us, we need not go into that matter.

The contention of the seamen as to their right to double wages or "waiting time" is

wholly lacking in merit. Assuming, without deciding, that they were entitled to recover the cost of transportation and the equivalent of wages which they might have earned while on their journey back to Newport News, it is clear that there was no refusal or neglect to make payment "without sufficient cause" within the meaning of the statute. The voyage for which they had signed had ended, and they had been paid the full amount of wages which they had earned. Not only was this true, but the vessel, having been incapacitated by the fire, had been laid up for repairs, and the seamen were not contending that their contract covered any additional service, but, on the contrary, had signed releases in full. Under such circumstances, there was ample ground on the part of the master to resist further payment, and the withholding thereof cannot be said to be so lacking in justification as to subject the vessel to the statutory penalty of double wages. As said by Mr. Justice Stone, speaking for the Supreme Court in the very recent case of Collie et al. v. Fergusson et al., 281 U. S. 52, 50 S. Ct. 189, 191, 74 L. Ed. ——:

"The phrase 'without sufficient cause' must be taken to embrace something more than valid defenses to the claim for wages. Otherwise, it would have added nothing to the statute. In determining what other causes are sufficient, the phrase is to be interpreted in the light of the evident purpose of the section to secure prompt payment of seamen's wages (H. R. Rep. 1657, Committee on the Merchant Marine and Fisheries, 55th Cong., 2d Sess.), and thus to protect them from the harsh consequences of arbitrary and unscrupulous action of their employers, to which, as a class, they are peculiarly exposed. The words 'refuses or neglects to make payment * * * without sufficient cause' connote, either conduct which is in some sense arbitrary or willful, or at least a failure not attributable to impossibility of payment. We think the use of this language indicates a purpose to protect seamen from delayed payments of wages by the imposition of a liability which is not exclusively compensatory, but designed to prevent, by its coercive effect, arbitrary refusals to pay wages, and to induce prompt payment when payment is possible. * * * That the liability is not incurred where the refusal to pay is in some reasonable degree morally justified, or where the demand for wages cannot be satisfied either by the owner or his

interest in the ship, has been the conclusion reached with practical unanimity by the lower federal courts."

In Pacific Mail S. S. Co. v. Schmidt, 241 U. S. 245, 36 S. Ct. 581, 60 L. Ed. 982, the Supreme Court held that the statutory penalty could not be recovered for the delay which occurred pending appeal, on the ground that the delay occasioned by the appeal could not be said to be without sufficient cause. And in Mystic Steamship Co. v. Stromland (C. C. A.) 21 F.(2d) 607, we applied the same rule to delay occasioned by contesting liability in good faith in the District Court. In that case we said: "It was certainly not the intention of Congress that the statute should be construed in such way as virtually to deny to shipowners the right to contest liability in cases of this sort, by making the penalties so great in case of failure to maintain the defense asserted as to deter them from making any defense at all."

The same rule applies in all cases where the failure to pay is due to the fact that payment is withheld in good faith under a reasonable belief that same is not due. The statute was intended to penalize shipowners who, without sufficient causes, withhold the wages of seamen. It was not intended to prevent them from contesting in good faith their liability for demands made upon them or to subject them to ruinous penalties, if, upon a contest made in good faith, it should turn out that they were wrong. As said by the Circuit Court of Appeals of the Second Circuit in the recent case of The Thomas Tracy, 24 F.(2d) 372, 374:

"The statute does not mean that the refusal to pay wages must be based upon a legal defense to the wages. It means that, although it may ultimately be determined that there is no actual legal defense to the claim for wages, nevertheless, if the owner or master had sufficient cause to withhold the wages, when demanded, beyond the time mentioned in the statute, it relieves the vessel of the imposition of the penalties."

And we agree with the following statement of the rule by Judge Ervin in the Cubadist (D. C.) 252 F. 658, 662:

"I do not think that the statute was intended to penalize any master or vessel for exercising sound judgment and discretion, or to require them to surrender such judgment under a penalty of double pay. I think the language used carries with it the idea that, where the court finds that the

master's refusal was willful and without justification or excuse, double pay should be given, but where the master was exercising a reasonable and proper discretion, and the question was doubtful, it reserves to the court the power to pass upon the question of the reasonableness or the sufficiency of the excuse of the master, and give or deny the double pay, accordingly as the court may find the contention of the master to be honest or a mere pretext."

See, also, O'Hara v. Luckenbach Steamship Co. (C. C. A. 9th) 16 F.(2d) 681; The Trader (D. C.) 17 F.(2d) 623; Corrigan v. U. S. (D. C.) 298 F. 610; The Silver Shell (D. C.) 255 F. 340; The Sadie C. Summer (D. C.) 142 F. 611; The St. Paul (D. C.) 133 F. 1002; The George W. Wells (D. C.) 118 F. 761; The Alice B. Phillips (D. C.) 106 F. 956.

We think, however, that the court below was in error in holding that, in case the seamen should appeal, the amount paid into court for them under the decree should be liable for any costs which might be taxed against them on the appeal in the event they should not prevail. The statute provides that courts, including appellate courts, shall be open to seamen in cases of this character without furnishing bonds or making deposit to secure fees or costs (40 Stat. 157, 683, 28 USCA § 837); and it was error to make it a condition of the appeal that the amount paid into court under its decree for the benefit of the seamen should stand good in any way for the costs of the appeal. In view of our disposition of the case on its merits, this error has now no practical significance, except that we think that, because of same, appellants should be allowed interest, and that the costs on appeal should be divided.

We do not mean by what we have said to hold that a seaman may at the same time collect a judgment in his favor and appeal from it. Had the seamen here collected the money paid into court under the decree, the question would have been presented whether this did not end the matter. For, except in the case where a judgment or decree represents an uncontroverted part of a demand, the ordinary rule is that one who accepts payment thereof will not be heard to question its correctness by appeal. 3 C. J. 681; 2 R. C. L. 63; notes 45 Am. St. Rep. 271, and cases cited; Ann. Cas. 1914C, 301. This question does not arise here, however, as the seamen have not collected the judgment in

their favor; and all that we hold is that the lower court was without power to enter the order that the amount paid into court should be liable for any costs which might be taxed against appellants on appeal.

The decree below will be modified so as to allow appellants interest upon the amounts allowed them by the court below, and the costs on appeal will be divided. As thus modified, the decree below will be affirmed.

Affirmed.