## KAISER v. STANDARD OIL CO. OF NEW JERSEY.
### No. 8154.

Circuit Court of Appeals, Fifth Circuit.
April 1, 1937.

T. G. Schirmeyer, of Houston, Tex., for appellant.

J. C. Hutcheson, III., of Houston, Tex., for appellee.

Before FOSTER and SIBLEY, Circuit Judges, and STRUM, District Judge.

STRUM, District Judge.

Libelant Frank C. Kaiser shipped aboard the motor vessel Vistula as a fireman. His wages were $65 per month, plus room and board. As the Vistula approached the northern European coast on September 30, 1935, she ran into a heavy storm, causing her to roll and pitch heavily. During the storm libelant was on watch in the fireroom, and had gone to an upper deck to empty a bucket over the side. Returning to the fireroom with the empty bucket in his left hand, libelant was descending a companionway ladder from which he fell, injuring his knee, hip, and elbow.

The ladder in question is about eight feet high, and runs from one deck to another at an angle of about thirty degrees from the perpendicular, quite close to and at right angles with a vertical steel bulkhead. The ladder consists of a series of wooden steps and has a tubular metal handrail on each side. The inner handrail is secured, top and bottom, to the vertical steel bulkhead alongside the ladder. Opposite the second step from the top of the ladder, the inner handrail is further secured to the steel bulkhead by a metal T piece, similar to a T pipe fitting, the base of which is riveted by a flange to the bulkhead, so that the stem of the T piece is at right angles with the bulkhead and the top of the T piece parallel with the ladder. The tubular handrail, which is in two sections, is screwed into each end of the top of the T, so as to form a continuous handrail along the entire length of the ladder. The top of the T piece has a slight ridge at each end above the inside threads, where the handrail screws into it, which ridge is not rounded off. Libelant claims that as he was descending the ladder, running his right hand along the inner handrail for support, his hand struck a sharp burr on the outer end of the T piece, which caused him to instinctively raise his hand from the handrail just as the ship rolled, thus causing him to be thrown from the ladder, and that such condition of the T piece rendered the ship unseaworthy.

Libelant appeals from a decree below awarding him $250 for wages, maintenance and cure, and denying him indemnity damages, the District Court finding that "there was no burr on the handrail and that the ship was not unseaworthy." Libelant asserts that the award for wages, maintenance and cure was insufficient and the finding as to seaworthiness erroneous.

The decree below was rendered March 18, 1936. On or about April 2, 1936, respondents sent libelant a check for $250 covering the amount awarded by the decree for wages, maintenance, and cure. This check was cashed by libelant on or before April 14, 1936. Appeal was entered June 6, 1936.

Accepting the fruits of a judgment and thereafter appealing therefrom are totally inconsistent positions, and the election to pursue one course is deemed an abandonment of the other. What, if anything, was due libelant for maintenance and cure was a controverted question below. Libelant having accepted the benefits of that separable portion of the decree, he is estopped to now question it in that respect. He will not be heard to both approbate and reprobate as to the same matter. As to this portion of the decree libelant is within the general rule, and not within the exceptions, stated in Carson Lumber Co. v. St. Louis Co. (C.C.A.) 209 F. 191, 193. See, also, Finefrock v. Kenova Co. (C.C. A.) 37 F.(2d) 310; The Velma L. Hamlin (C.C.A.) 40 F.(2d) 852; 2 R.C.L. 61, 62.

The District Court's findings that there was no burr on the handrail and that the ship was not unseaworthy are fully supported by the evidence. The only testimony that such a burr existed is from the libelant himself, who also admitted on cross-examination that he had frequently used this ladder and handrail on previous occasions and had never before noticed such a burr; also that several days after the accident he went back and examined the rail, but was unable to find a burr or sharp spot. He sought to explain the latter by his testimony that a member of the crew had gone over the T piece and rail with a file after the accident. The man who did this, however, testified as libelant's witness that when libelant told him of the accident he examined the T piece and could find no rough or sharp places on it by feeling it with his hand, but went over it with a file "in case something stuck out of it." The captain and chief engineer of the vessel testified that they examined the handrail, the former almost immediately after the accident, and the latter next day, and could find no rough or sharp burr on the rail. Other members of the crew who frequently used the ladder in question testified to the absence of any such burr as libelant described, leaving libelant not only uncorroborated, but persuasively contradicted in the assertion that such a burr existed. We find no reason to disturb the conclusions of the District Judge upon the evidence. Other errors assigned have been examined, but no reversible error found.

Affirmed.