# UNITED STATES *v.* HOUGHAM ET AL.

No. 24.  Argued October 18, 1960.—Decided November 7, 1960.

*Wayne G. Barnett* argued the cause for the United States. On the brief were *Solicitor General Rankin, Assistant Attorney General Doub, Morton Hollander* and *Anthony L. Mondello.*

*Calvin H. Conron* argued the cause for respondents. With him on the brief was *W. E. James.*

MR. JUSTICE BLACK delivered the opinion of the Court.

Section 16 of the Surplus Property Act of 1944 gave priority preferences to veterans in the purchase of surplus war materials. 58 Stat. 765. Section 26 authorized the United States to recover damages against any person who obtains such property from the Government by "fraudulent trick, scheme, or device . . . ." The complaint in this case charged that respondent Hougham, a nonveteran, combined with the other respondents, who are veterans, and obtained for his own business purposes hundreds of items of surplus property, including trucks, trailers and other equipment, by fraudulent use of the veteran respondents' priority certificates. After hearings, the District Court found respondents guilty of fraud as charged and awarded damages in the amount of $8,000. Both sides appealed. The Court of Appeals affirmed, rejecting both the Government's contention that the damages awarded were inadequate and the respondents' contentions that the finding of fraud was clearly erroneous and that the claims were barred by the statute of limitations. 270 F. 2d 290. Because the case raises important questions concerning the interpretation and application of

the Surplus Property Act, we granted the Government's petition for certiorari. 361 U. S. 958.

The respondents first contend that the entire controversy here has been settled, is therefore moot, and that the Government is estopped from further pressing claims against them. This contention rests upon the fact—set out in respondents' brief and not disputed by the Government—that after the trial court judgment was entered and before it was affirmed by the Court of Appeals, the Government accepted from respondents promissory notes totalling $8,000, the amount of the trial court judgment. The contention is that this fact alone renders the case moot or at least creates some sort of estoppel against the Government. We disagree. It is a generally accepted rule of law that where a judgment is appealed on the ground that the damages awarded are inadequate, acceptance of payment of the amount of the unsatisfactory judgment does not, standing alone, amount to an accord and satisfaction of the entire claim. See, for example, *Embry* v. *Palmer*, 107 U. S. 3; *Erwin* v. *Lowry*, 7 How. 172, 183–184. This case provides a perfect example of the good sense underlying that rule. For here it was the respondents themselves who proposed payment of the $8,000, asserting expressly as their purpose in so doing the obtaining of a "Full Release of Judgment Liens" filed in the Counties of Los Angeles and Kern. The Government did nothing more in the entire transaction than accept the notes and execute the requested release. Since that release was expressly denominated only as a "Full Release of Judgment Liens" for the Counties of Los Angeles and Kern, it simply is not and cannot properly be interpreted to constitute a full release of all the Government's claims against respondents. Moreover, since the transfer of the notes occurred prior to the decision of the Court of Appeals, it is clear that neither of the parties regarded that transfer as an accord and satisfaction of the

entire controversy for *both* pursued their appeals in that court. Thus respondents' contention here is totally inconsistent with their position in the Court of Appeals where they sought to avoid *all* liability to the Government, including liability for the $8,000 they had already paid. For that position must necessarily have been predicated upon the view that the payment was without prejudice to the rights of either party as those rights might come to be established by subsequent judicial decree. Under such circumstances, the contention that the Government has lost its right to press its claim for the full amount of damages it believes due is wholly untenable.

We find it unnecessary to discuss at length respondents' second contention—that the claims asserted by the Government are barred by the statute of limitations. It is sufficient to say that the courts below were entirely correct in rejecting that contention for, resting as it does upon the assumption that recoveries under § 26 (b) are penalties, it is inconsistent with our holding in *Rex Trailer Co.* v. *United States,* 350 U. S. 148.

We therefore proceed to the principal controversy—the question of the adequacy of the damages awarded to the Government. Section 26 (b) provides in relevant part that those who obtain property by the kind of fraud established here:

> "(1) shall pay to the United States the sum of $2,000 for each such act, and double the amount of any damage which the United States may have sustained by reason thereof, together with the costs of suit; or
>
> "(2) shall, if the United States shall so elect, pay to the United States, as liquidated damages, a sum equal to twice the consideration agreed to be given by such person to the United States or any Government agency; or

"(3) shall, if the United States shall so elect, restore to the United States the property thus secured and obtained and the United States shall retain as liquidated damages any consideration given to the United States or any Government agency for such property."

In its complaint as originally filed, the Government claimed recovery as authorized by § 26 (b)(1)—$2,000 for each fraudulent act plus double the amount of any actual damages. Subsequently, the Government attempted to file a First Amended Complaint claiming liquidated damages under § 26 (b)(2). Upon indication of the trial judge that the claim in the original complaint under § 26 (b)(1) amounted to an irrevocable election of remedies, but without any formal ruling to that effect, the Government withdrew the First Amended Complaint and filed a Second Amended Complaint in which it reverted to its original claim under § 26 (b)(1). Still later, however, following pretrial proceedings under Rule 16 of the Federal Rules of Civil Procedure, the district judge, with the approval of counsel for both parties, entered a pretrial conference order which provided, "[T]his order shall supplement the pleadings and govern the course of the trial of this cause, unless modified to prevent manifest injustice." And the order expressly enumerated the "issues of law" that remained "to be litigated upon the trial." One of the issues so reserved was the legal correctness of the Government's argument that it was entitled to recover "double the amount of the sales price of the vehicles described in the Second Amended Complaint," that it was "entitled to make its election [as between § 26 (b)(1) and § 26 (b)(2)] at any time prior to judgment" and that it did then elect "in the event of judgment in its favor, to receive as liquidated damages a sum equal to twice the consideration agreed to be given to the United

States." The District Court ultimately decided this legal issue against the Government, holding that the original complaint constituted an irrevocable election, and proceeded to award damages of $8,000 under § 26 (b)(1). The Court of Appeals affirmed this judgment on a different ground. It held that the refusal of the District Court to permit recovery under § 26 (b)(2) was within its power to determine the appropriate remedy under § 26 (b), asserting that no issue as to election of remedies was even involved in the case. 270 F. 2d, at 293.

The Government contends that denial of recovery under § 26 (b)(2) cannot be justified on either of the theories adopted below. Respondents contend that the Government waived its right to urge this contention by voluntarily proceeding to judgment on the Second Amended Complaint. This contention is predicated upon the failure of the Government to get a formal ruling on its First Amended Complaint before withdrawing it and filing the Second Amended Complaint. But, as shown above, the pretrial order and the conclusions of law of the District Court both show that the Government urged its right to change its election up to the time judgment was rendered. That pretrial order, as authorized by Rule 16, conclusively established the issues of fact and law in the case and declared that the issues so established should "supplement the pleadings and govern the course of the trial . . . ." One of these supplementary issues was the Government's contention that it was entitled to recover under § 26 (b)(2), rather than under § 26 (b)(1) as claimed in the Second Amended Complaint. Thus the pretrial order changed the claim in that complaint from § 26 (b)(1) to § 26 (b)(2) insofar as the Government had the power to change its election, and posed an issue which required adjudication by the District Court. That such was the effect of the order is clear from the language of Rule 16 which provides that the

court, after pretrial conference, "shall make an order which recites . . . the amendments allowed to the pleadings . . . and such order when entered controls the subsequent course of the action, unless modified at the trial to prevent manifest injustice." Since the pretrial order here reserved the legal question as to the Government's right to change its election and since the court expressly decided that question against the Government,* the question most certainly was not waived and must here be determined.

Thus, we come to the question whether the courts below were correct in holding that the Government was not entitled to damages under § 26 (b)(2). With respect to the theory adopted by the District Court that the Government's original complaint constituted an irrevocable election of remedies, we can find nothing either in the language of § 26 (b) or in its legislative history which lends the slightest support to such a construction. This fact leads naturally to the conclusion that the ordinary liberal rules governing the amendment of pleadings are applicable. The applicable rule is Rule 15 of the Federal Rules of Civil Procedure, which was designed to facilitate the amendment of pleadings except where prejudice to the opposing party would result. Despite respondents' argument to the contrary, we see this case as one where

---

*The language of the trial judge on this point was unequivocal: "This Court rules that the plaintiff United States can only receive liquidated damages under the provisions of Section 26 (b)(2) if it elects to receive only such damages originally in the action; that since the United States sought damages under the provisions of Section 26 (b)(1) in the original complaint, that such is an irrevocable election; that the plaintiff United States cannot thereafter amend its complaint to seek liquidated damages under the provisions of Section 26 (b)(2), or otherwise elect to receive liquidated damages under the provisions of Section 26 (b)(2), but that the United States is thereafter limited as the measure of its recovery for liquidated damages to those liquidated damages set forth in Section 26 (b)(1)."

there plainly was no such prejudice. In such a situation, acceptance of respondents' contention on this point would subvert the basic purpose of the Rule. "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley* v. *Gibson,* 355 U. S. 41, 48. We therefore conclude that under the circumstances of this case the Government had a right to amend its pleadings and that the District Court erred in refusing to permit such amendment.

The alternative theory of the Court of Appeals appears, upon examination, to be equally untenable. The Court of Appeals interpreted § 26 (b) as placing power in the District Court to determine, according to the evidence presented in any particular case, which of the three subsections would be most appropriate and to require the Government to accept judgment under that subsection. That interpretation collides with the express language of § 26 (b) which provides for recovery under any one of the three subsections "if the *United States* shall so elect." (Emphasis supplied.) Since the language of the section is conclusive on this point, the theory adopted by the Court of Appeals must also be rejected.

The respondents' final contention is that in any event they are entitled to a new trial. Obviously, there need be no new trial on the fraud issue. But respondents also urge that there is no support in the record for a judgment fixing the Government's recovery under § 26 (b)(2) at "twice the consideration agreed to be given" for the vehicles. There was no consideration "agreed to be given," the argument proceeds, because all the transactions involved cash sales at a price fixed by the Government. This argument, while ingenious, is not sound. Cash sales, like others, must follow an agreement of the parties with regard to consideration "to be given."

Respondents' contention to the contrary would, if accepted, allow any purchaser from the Government to effectively avoid liability under § 26 (b)(2) simply by being careful to make all of its fraudulent dealings in cash. Plainly, however, the Government suffers just as much from a fraudulent cash sale as from a fraudulent credit sale. An interpretation of § 26 (b)(2) which allows recovery for the one but not for the other cannot be accepted. The respondents' contention for a new trial must be rejected.

The judgment is therefore reversed and the cause remanded to the District Court with directions to enter judgment for the United States under § 26 (b)(2).

*It is so ordered.*

MR. JUSTICE WHITTAKER, with whom MR. JUSTICE DOUGLAS joins, dissenting.

With all deference, I cannot agree and must dissent for two reasons.

*First.* One may not appeal from a money judgment that he has collected and satisfied. Here, as the Court recognizes, after the judgment was entered the Government accepted promissory notes from respondents in payment of the judgment. I think, with, I respectfully submit, the support of all the relevant cases—which are legion—that the Government, having recovered a judgment for $8,000, over the serious protests of respondents that they owed it nothing, and having, with knowledge of all the facts, accepted the benefits of the judgment by collecting and satisfying it, cannot thereafter prosecute an appeal to reverse it.

The Court relies on *Embry* v. *Palmer,* 107 U. S. 3, and *Erwin* v. *Lowry,* 7 How. 172, 184, for its conclusion that the Government may prosecute this appeal from the judgment notwithstanding it has satisfied it. But, with deference, I must say those cases do not support the

Court's conclusion. The issue in the *Embry* case was whether Embry was entitled to $9,185.18, as he claimed, or to only $2,296.29, as the respondents contended and admitted to be due. The court awarded recovery of only the latter sum which Embry accepted. He afterwards appealed from the judgment, and it was held that he might do so for, as the court pointed out: "The amount awarded, paid, and accepted constitutes no part of what is in controversy." *Id.*, at 8. How different from the situation here! That case was like the later one of *Reynes* v. *Dumont*, 130 U. S. 354, where the appellants received so many of certain bonds as were not taken to satisfy the judgment from which they appealed. It was contended that their action in doing this so completely accepted the judgment that they could not appeal. In rejecting that contention, this Court said:

> "The acceptance by appellants of what was confessedly theirs cannot be construed into an admission that the decree they seek to reverse was not erroneous, nor does it take from appellees anything, on the reversal of the decree, to which they would otherwise be entitled. *Embry* v. *Palmer,* 107 U. S. 3, 8." 130 U. S., at 394.

Those cases fall within a well-recognized but very narrow exception to the general rule that is applicable here. Similarly, the *Erwin* case did not involve the collection and satisfaction of a judgment. Rather, it involved only the performance by Erwin of a minor collateral "condition imposed upon him before he [could] have the fruits of the decree" in equity. *Id.*, at 184. Like *Embry,* that case does not at all rule the question here presented.

The case in this Court that most nearly rules our question is *Gilfillan* v. *McKee,* 159 U. S. 303. There appellant claimed an interest in a special fund of $7,070 and also claimed to be entitled jointly to participate in a general

fund of $147,057.63. A portion of the special fund was awarded to him in one division of the judgment, but another division of the judgment denied to him any right to participate in the general fund. He appealed, and was met with the claim that by accepting the award of a part of the special fund, he had taken under the judgment and therefore could not appeal from it. Recognizing that one cannot appeal from a judgment that he has collected and satisfied, the Court said: ". . . the acceptance of the whole or a part of a particular amount awarded to a defendant might perhaps operate to estop him from insisting upon an appeal." But the court found that "there were practically two decrees in this case, one applicable to the special fund, which, in the bill, the subsequent pleadings, and in the decree, had been kept as a distinct and separate matter, a portion of which fund was awarded to McPherson; and the other applicable to the general fund in which McPherson had been denied any participation whatever." And the court held that "his acceptance of a share in the special fund did not operate as a waiver of his appeal from the other part of the decree disposing of the general fund." *Id.*, at 311.

The Fourth Circuit has flatly ruled this question in *Finefrock* v. *Kenova Mine Car Co.*, 37 F. 2d 310, among other cases. There the appellant accepted payment of a judgment for an amount substantially less than he claimed and afterwards appealed. In holding that he could not appeal from a judgment that he had collected and satisfied, the court said at 314:

> "We do not find it necessary to enter into a discussion of these questions in view of the acceptance by the appellant of the amount allowed him in full satisfaction and discharge of the judgment. He contends that there is no inconsistency in his acceptance of the money and the prosecution of the appeal, relying on such decisions as *Embry* v. *Palmer*, 107 U. S.

3, 8, 2 S. Ct. 25, 27 L. Ed. 346; *McFarland* v. *Hurley* (C. C. A.) 286 F. 365; *Carson Lumber Co.* v. *St. Louis, etc., Railroad Co.* (C. C. A.) 209 F. 191, 193; *Snow* v. *Hazlewood* (C. C. A.) 179 F. 182. But it is obvious that he falls within the general rule and not within the exceptions thereto as set out in *Carson Lumber Co.* v. *St. Louis, etc., Railroad Co., supra.*" [1]

The Third Circuit has likewise flatly ruled the question in the same way, *Smith* v. *Morris,* 69 F. 2d 3; so has the Fifth Circuit, *Kaiser* v. *Standard Oil Co.,* 89 F. 2d 58; *White & Yarborough* v. *Dailey,* 228 F. 2d 836, and the Eighth Circuit, *Carson Lumber Co.* v. *St. Louis & S. F. R. Co.,* 209 F. 191. Literally dozens of cases by the courts of last resort in almost all the States in the Union have so held.[2]

---

[1] In *Carson Lumber Co.* v. *St. Louis & S. F. R. Co.,* 209 F. 191 (C. A. 8th Cir.), the Court said, at 193–194:

"It is undoubtedly the general rule that a party who obtains the benefit of an order or judgment, and accepts the benefit or receives the advantage, shall be afterwards precluded from asking that the order or judgment be reviewed. Nevertheless, this rule is not absolute where the judgment or decree is not so indivisible that it must be sustained or reversed as a whole. It has no application to cases where the appellant is shown to be so absolutely entitled to the sum collected upon the judgment that the reversal of it will not affect his right to the amount accepted (*Reynes* v. *Dumont,* 130 U. S. 354–394, 9 Sup. Ct. 486, 32 L. Ed. 934), especially where there is not present conduct which is inconsistent with the claim of a right to reverse the judgment or decree, which it is sought to bring into review (*Embry* v. *Palmer,* 107 U. S. 3–8, 2 Sup. Ct. 25, 27 L. Ed. 346; *Merriam* v. *Haas,* 3 Wall. 687, 18 L. Ed. 29; *United States* v. *Dashiel,* 3 Wall. 688, 18 L. Ed. 268)."

[2] Those interested will find many of those cases collected in the notes to 2 Am. Jur., Appeal and Error, § 214, where the authors have regarded the rule as so certain and universal as to permit them flatly to say: "The general rule . . . is that a litigant who has, voluntarily and with knowledge of all the material facts, accepted the benefits of an order, decree, or judgment of a court, cannot afterwards take or prosecute an appeal or error proceeding to reverse it."

I, therefore, respectfully submit that the settled law requires the conclusion that the Government, having collected and satisfied this judgment with knowledge of all the facts, cannot prosecute this appeal to reverse it. This appeal should, therefore, be dismissed.

*Second.* At all events, the Government is not entitled to a reversal of the judgment, because it went to trial, and proceeded all the way to judgment, upon a complaint that asked damages only under subdivision (1) of § 26 (b), not under subdivision (2) of that section. The procedural chronology was as follows. In its original complaint the Government sought damages "of $2,000 for each such act," under subdivision (1). It thereafter filed a motion for leave to file a First Amended Complaint asking damages in "a sum equal to twice the consideration agreed to be given," under subdivision (2). But it did not press that motion to decision. On the contrary, the record shows that the Government formally withdrew that motion and instead filed a Second Amended Complaint, again, as in its original complaint, asking damages in "the sum of $2,000 for each such act," under subdivision (1). It was upon that complaint that it went to trial and all the way to judgment.

Of course, under the express terms of § 26 (b), the Government had the right to elect which of the three allowable measures of recovery it would seek, but surely it is possible for the Government at some stage irrevocably to make that election. I agree it did not irrevocably do so by the filing of the original complaint, but I insist that it did do so by filing the Second Amended Complaint and going to trial and all the way to judgment on it. If that conduct did not effect the election, I would ask what could?

It is true that a pretrial conference was held and a pretrial order was entered, under Rule 16 of Fed. Rules Civ. Proc. One of the objects authorized by that Rule

is "[t]he simplification of the issues," and another is to consider "The necessity or desirability of amendments to the pleadings." The order recited that one of the issues of *fact* to be tried was whether the "defendants became and are liable to pay to the United States the sum of $2,000 for each act committed by them that [may be] determined by the court to be in violation of said statute"; and, under "issues of law . . . to be litigated upon the trial," the following appears:

"It is the contention of plaintiff that it is entitled to double the amount of the sales price of the vehicles described in the Second Amended Complaint . . . . Previously the Court has indicated that an irrevocable election has been made by the United States by virtue *of the successive complaints on file.* It is the contention of plaintiff that it is entitled to make its election at any time prior to judgment. Plaintiff elects, *in the event of judgment in its favor,* to receive as liquidated damages a sum equal to twice the consideration agreed to be given to the United States or federal agency involved. Plaintiff respectfully calls this to the attention of the Court so that the point may be preserved for purposes of appeal." (Emphasis added.)

Of course, in simplifying the issues, the Court may, by the pretrial order, define the issues to be tried, *but those issues must be within the pleadings.* And amendments to the pleadings should be freely allowed as Rule 15 provides. But here the Government did not seek leave at the pretrial conference, or at any time after having voluntarily filed its Second Amended Complaint, to amend its pleading. It did not even unconditionally elect at the pretrial conference to proceed under subdivision (2) but only "in the event of judgment in its favor." Instead, it went all the way to trial, and to judgment, on the

complaint that sought damages in "the sum of $2,000 for each such act," and it obtained a judgment on that basis. Surely, that conduct constituted an irrevocable election by the Government to recover damages in the measure claimed in its final complaint, and I think the Government is bound by it.

For the first of these reasons, I would dismiss the appeal, but inasmuch as the Court does not agree, I would, at the minimum, affirm the judgment on the ground that the Government irrevocably elected to recover the measure of damages that it recovered and hence is bound by that election.