765 F.2d 145
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
ALICIA E, MARSH, PLAINTIFF-APPELLANT,
v.
TENNESSEE VALLEY AUTHORITY; POWER EQUIPMENT CO.; TAMPO
MANUFACTURING COMPANY, INC.; JERRY DEATLEY; RICHARD DOCKERY;
BOBBY VINCIL; BOBBY BURKE; JAMES MOSER; AND POWER EQUIPMENT
COMPANY, DEFENDANTS-APPELLEES.
 NO. 84-5120
 United States Court of Appeals, Sixth Circuit.
 5/31/85
 
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE
 BEFORE: MARTIN and KRUPANSKY, Circuit Judges; and WEICK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff Alicia E. Marsh (Marsh) appealed the various partial summary judgments and the directed verdict entered pursuant to motions filed by the defendants Tennessee Valley Authority (TVA), TVA employees Jerry Deattley, Richard Dockery, Bobby Vincil, Bobby Burke and James Moser, Power Equipment Company (PECO) and Tampo Manufacturing Company, Inc. (Tampo) during the course of this products liability litigation. The relevant facts are as follows.
 
 
 2
 The 'Ocoee Flume Line Project' on which plaintiff was working when injured involved replacing an old wooden flume perched on a mountainside, preparation of a bed for the new flume, and construction of the new flume. Part of this preparation required the placement and compaction of gravel on a ledge in accordance with TVA specifications. TVA contracted Jones-Hailey (J-H) to perform the work. Plaintiff Marsh was an employee of J-H.
 
 
 3
 Marsh's primary assignment at the site was to operate a roller compactor, manufactured by defendant Tampo and leased by J-H from defendant PECO, to compact the gravel on the flume bed. The compactor did not have a roll-over protective structure (ROPS).
 
 
 4
 Marsh acknowledged that she had been operating the compactor throughout the spring and summer of 1981 and was thoroughly familiar with its characteristics. On the morning of September 4, 1981, Marsh was operating the compactor near the outer edge of the flume bed when she felt a 'funny sensation.' She stopped to observe the area, but could see nothing out of the ordinary. Plaintiff resumed operation of the equipment and began moving backward when she experienced a sinking sensation. She attempted to jump from the machine, but slipped and was thrown from the vehicle as it left the flume bed. While plaintiff attempted to clear the machine, the compactor continued to move in reverse toward the edge of the flume bed and ultimately backed off the ledge. The plaintiff received injuries as a result of the accident. There were no eye-witnesses to the incident.
 
 
 5
 Plaintiff initiated suit against the defendants, alleging that their individual and/or collective negligence caused her injuries. Marsh also asserted strict liability and breach of express or implied warranty as theories of recovery against PECO and Tampo.
 
 
 6
 Prior to trial, the district court granted a motion for summary judgment on behalf of the individual defendants who were employees of TVA. The court also granted a partial summary judgment in favor of TVA and defendant PECO. Following the plaintiff's proof, the court granted TVA's motion for a directed verdict. After the defendant's proof, the court submitted the case to the jury as to the defendants PECO and Tampo upon issues of negligence and strict liability. The jury returned a verdict in favor of these defendants.
 
 
 7
 The plaintiff moved for a new trial which the court overruled and from which the plaintiff appealed. Specifically, plaintiff charged that the district court erred (1) in granting summary judgment for the individual TVA employees named as defendants herein; (2) in granting partial summary judgment for TVA, thus excluding plaintiff's claim that TVA breached its duty to inspect the site for safety hazards; (3) in directing a verdict for TVA at the conclusion of the plaintiff's proof; (4) in granting a partial summary judgment in favor of PECO upon the issue of warranty of fitness; and (5) in restricting the testimony of plaintiff's experts and refusing admission of a 'learned treatise' into evidence.
 
 
 8
 Regarding TVA and its employees, the plaintiff was charged with the burden of proving the breach of a duty due her from these defendants. The existence or nonexistence of such a duty 'is entirely a question of law . . . and it must be determined by the court.' Dill v. Gamble Asphalt Materials, 594 S.W.2d 719, 721 (Ky. App. 1979) (citing W.Prosser, Law of Torts, Sec. 37 (4th ed. 1971)). This court agrees with the district court that the teachings of Musgrave v. Tennessee Valley Authority, 391 F.Supp. 1330 (N.D. Ala. 1975); and Cooper v. Metropolitan Government of Nashville, et al., 628 S.W.2d 30 (Tenn. App. 1981) control the instant action and belie plaintiff's argument that the TVA and its employees had a duty to insure plaintiff's safety as an employee of an independent contractor. Tennessee law does not permit an independent contractor's duty to its employees to be imputed to its employer. Southern Ry. Co. v. Welsh, 247 F.2d 340, 341 (6th Cir. 1957) (per curiam); Overstreet v. Norman, 44 Tenn. App. 343, 314 S.W.2d 47 (1958), cert. denied; Whittle v. Atlas, 34 F.Supp. 563, 564 (E.D. Tenn. 1970). The conclusion of the court below that plaintiff could not, as a matter of law, recover from either TVA or TVA employees on her negligence claim should not be disturbed on appeal.
 
 
 9
 Plaintiff has also challenged the district court's summary judgment in favor of PECO, which was based upon the conclusion that PECO breached no common-law warranty of fitness to plaintiff by supplying J-H with a roller compactor which was allegedly unsafe for its intended use. This court concurs with the district court that even if such a common law warranty was recognized in Tennessee jurisprudence, the specific disclaimer of such a warranty incorporated into the leasing agreement between PECO and J-H unequivocally negated any liability. See Redman v. U-Hall Co., 358 S.W.2d 300, 302 (Tenn. 1962) (parties may provide by express agreement for terms different than those otherwise implied in law). Plaintiff's allegations charging a violation pursuant to the statutory warranty of merchantability, as set forth in Sec. 315 of the Uniform Commercial Code (UCC), as an alternative to a common-law theory is undermined by failure to include any reference to such a UCC anchored assertion in the final pretrial order. U.S. v. Hougham, 364 U.S. 310, 315, 81 S.Ct. 13, 17, 5 L.Ed.2d 8, reh'g denied, 364 U.S. 938 (1960) (final pretrial order controls the subsequent course of the pleadings in accordance with Fed.R.Civ.P. 16(e)); McKinney v. Galvin, 701 F.2d 584, 585 (6th Cir. 1983) (same).
 
 
 10
 Plaintiff's final argument is that the trial court committed reversible error in two evidentiary rulings: (1) by refusing to permit her experts, David MacCollum and Dr. Ronald B. Cox, to express opinions as to the extent and nature of injuries which plaintiff would have suffered as a result of the accident had the roller compactor been equipped with a roll-over safety system (ROPS); and (2) by denying admission of certain graphs into evidence which purported to explain the effect upon a human body falling certain distances.
 
 
 11
 Preliminary to its rulings, the trial court interrogated the experts extensively as to their qualifications. The court subsequently permitted them to testify about ROPS generally, as well as to express opinions on the inherently dangerous propensities of the equipment and the hazards inherent to its operation at the site. The court refused, however, to allow these witnesses to express opinions on the probable extent of injuries which plaintiff would have received had the compactor been equipped with an ROPS or to express opinions as to the human body's physical tolerance and reaction to outside forces, impacts, and unnatural movements.
 
 
 12
 The introduction of expert testimony is a question of law for the trial court to be made in accordance with the provisions of the Federal Rules of Evidence. FRE 104. Pursuant to FRE 702, a witness will be permitted to express an opinion as an expert if qualified by knowledge, skill, experience, training or education, and if the proffered opinion will assist the trier of fact in understanding other evidence adduced or to determine a fact at issue. U.S. v. Smith, 736 F.2d 1103 (6th Cir. 1984). The trial court's decision regarding expert testimony is discretionary and will only be reversed for an abuse of that discretion. Mannino v. International Manufacturing Co., 650 F.2d 846, 851 (6th Cir. 1981); Morvant v. Construction Aggregates Corp., 570 F.2d 626, 634 (6th Cir. 1978).
 
 
 13
 The considered ruling by the district judge herein simply cannot be deemed an abuse of discretion.
 
 
 14
 Plaintiff also complained of the trial court's failure to submit certain exhibits to the jury purporting to describe the effect on a human body falling specific distances. Plaintiff argued that these graphs should have been admitted under the 'learned treatise' exception to the hearsay rule set forth at FRE 803(18). Even assuming, arguendo, that the materials satisfied the criteria for a 'learned treatise,' FRE 803(18) express prohibition against receiving such documents into evidence as exhibits: 'If admitted, the statements may be read into evidence but may not be received as exhibits' (emphasis added). See, e.g., Dawson v. Chysler Corp., 630 F.2d 950 (3d Cir. 1980); Garbincius v. Boston Edison Co., 621 F.2d 1171 (1st Cir. 1980).
 
 
 15
 In view of the foregoing, the decision of the court below is AFFIRMED.