**In re Leonard HAIMES, Debtor.**

**UNITED STATES of America, Plaintiff,**

v.

**Leonard HAIMES, Defendant.**

**Bankruptcy No. 90–39632–BKC–RAM. Adv. No. 91–0242–BKC–RAM–A.**

United States Bankruptcy Court, S.D. Florida.

Aug. 12, 1994.

Lance H Baker, Ft. Lauderdale, FL.

Douglass E. Wendel, Palm Beach, FL.

### MEMORANDUM OPINION

JAMES G. MIXON, Bankruptcy Judge.

On December 21, 1990, Leonard Haimes filed a voluntary petition for relief under the provisions of Chapter 7 of the United States Bankruptcy Code. On March 29, 1991, the Internal Revenue Service (IRS), filed a complaint objecting to the debtor's discharge under several subsections of 11 U.S.C. § 727 (1988). Trial on the merits was conducted in West Palm Beach, Florida, on June 25 and 26, 1991. At the conclusion of the plaintiff's case in chief, the debtor's motion for a directed verdict was granted and the complaint dismissed.

On August 9, 1991, the plaintiff filed a motion to alter or amend the judgment and a motion to amend the complaint to allege that the debtor's tax liability was excepted from discharge pursuant to 11 U.S.C. § 523(a)(1)(C) (1988). On October 9, 1991, an order was entered denying both motions. On October 11, 1991, the IRS filed a notice of appeal to the district court. On October 19, 1992, the district court entered a memorandum opinion and judgment reversing the previous decision of this court and remanding the case for further proceedings. *See United States v. Haimes (In re Haimes)*, 146 B.R. 298 (S.D.Fla.1992).

On September 3, 1993, a hearing was conducted in Miami, Florida, in accordance with the mandate of the district court. At the conclusion of the hearing, the matter was taken under advisement.

The proceeding before the court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) and (J) (1988), and the court has jurisdiction to enter a final judgment in

the case. The following shall constitute the court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

## I

### 11 U.S.C. § 727(a)(2)(A)

The district court determined that this court abused its discretion by "disregarding the inference of fraudulent conveyance" and that the debtor's discharge should have been denied under 11 U.S.C. § 727(a)(2)(A) (1988), even though the IRS did not make any reference to section 727(a)(2)(A) in its complaint. The district court reasoned that "[p]laintiff is entitled to the relief appropriate to its proof, regardless of the theory or statute it pled." *United States v. Haimes (In re Haimes)*, 146 B.R. 298, 302 (S.D.Fla.1992) (quoting *In re Kerner*, 99 B.R. 484, 486 (Bankr.S.D.Fla. 1989), citing Fed.R.Civ.P. 54(c); Fed. R.Bankr.P. 7054; and *United States v. Hougham*, 364 U.S. 310, 81 S.Ct. 13, 5 L.Ed.2d 8 (1960)).

This court is bound by the determination of the district court. For the reasons expressed by the district court, the debtor's discharge is denied pursuant to 11 U.S.C. § 727(a)(2)(A).

## II

### 11 U.S.C. § 523(a)(1)

The district court also determined that this court should have allowed the IRS to amend its complaint to include the allegation under 11 U.S.C. § 523(a)(1) (1988). The district court held that this court erroneously determined that a complaint pursuant to 11 U.S.C. § 523(a)(1) must be filed within the sixty-day period of limitations provided by Fed.R.Bankr.P. 4007. As the district court correctly pointed out, actions under 11 U.S.C. § 523(a)(1) are not subject to any statutory period of limitations. *See Fernandez v. Internal Revenue Service (In re Fernandez)*, 112 B.R. 888 (Bankr.N.D.Ohio 1990). The district court remanded the case with instructions to allow the amended complaint and consider the allegations on the merits.

## BACKGROUND

The debtor has an outstanding tax liability to the IRS for the years 1979 through 1984 and for the year 1988. The parties agree that the tax liability for the year 1988 is not subject to the discharge. On the date of the first trial in this matter in June 1991, the debtor's tax liability to the IRS totaled $603,821.62.

The debtor is a medical doctor who has practiced medicine at the same location in Boca Raton, Florida, since 1986. The debtor married Samantha Krohn Haimes in August 1988, and she has worked with him at his office since that time. The debtor testified that his medical practice utilized a significant amount of "alternative medicine." He described alternative medicine as the minimal use of toxic drugs and "lots of nutritional support, [a] total program which would include ... nutrition, exercise, and ... balancing body chemistry."

On April 15, 1988, the debtor formed Metabolic Health Systems, Inc., (Metabolic), and issued 100% of the stock to himself. Metabolic has three employees, the debtor who is a doctor, Barbara Donaldson, a nurse, and Julie Pueblo, the receptionist, who is also president of the corporation. The debtor performs his medical practice through Metabolic. On April 15, 1988, the debtor's wife formed Isotherapy Laboratories, Inc. (Isotherapy), and issued 100% of the stock to herself.

The debtor's corporation, Metabolic, and his wife's corporation, Isotherapy, purported to engage in business with one another. On April 20, 1988, Metabolic and Isotherapy executed a lengthy written contract for management services by Isotherapy for Metabolic. The contract provides in part that Isotherapy shall perform the following duties:

A. Indemnify and hold harmless Metabolic Health Systems, Inc., from all claims actions, judgments, costs of suit, attorneys fees, expenses, and liability arising out of its services.

B. Provide at dates agreed to from time to time by the parties necessary reports, either oral or written.

C. Consult with those providing specialized services.

The debtor testified that Isotherapy was responsible for keeping a continuous inventory of supplements that the debtor sold to his patients. Isotherapy was to summarize written material received concerning the supplements and ensure that the appropriate supplements were ordered. The debtor stated that he made the final decision concerning which supplements to order and the actual order was placed by Barbara Donaldson, an employee of Metabolic.

The debtor acknowledged, that the contract for services was not "activated" until September 1989 and that some of the described services were never performed by Isotherapy. The contract provided that, in consideration for services performed, Isotherapy would be paid $600.00 per week plus costs and 50% of the net proceeds from the sale of all supplements. The supplements were sold by Metabolic, upon the debtor's recommendation to his patients.

The debtor's wife testified about the services Isotherapy performed for Metabolic. She stated "It was my responsibility to go into the office everyday, to shut off the alarm system ... to get the charts ready for the patients, to take out the day sheets ... to record the cash receipts for the day ... to pull the charts, to meet with the patients ... to make sure the lights were on, the music on." She said that "If the doctor or nurse was not ready, I would weigh [the patient,] record the weight [and] ... place [the patient] in the examining room." She stated that when the doctor was finished with a patient she would secure the payment for services, record the payment and record the next appointment. She also obtained medical histories from the patients, filled out insurance forms and answered the telephone. The debtor's wife acknowledged on cross-examination that during the period of time in question she did not work full time in the doctor's office.

On September 19, 1989, Metabolic and Isotherapy entered into an additional written agreement regarding an "ozone generator." The contract provided in relevant part as follows:

2. Metabolic Health Services, Inc., has formulated a plan to provide "ozone" services to patients.

3. Isotherapy Laboratories, Inc., has purchased a model 007 ozone generator with attachments and delivered said items to the offices of Metabolic Health Services, Inc., 7300 North Federal Highway, Boca Raton, Florida.

4. Isotherapy Laboratories, Inc., shall service said item and provide any modification or additions.

. . . .

6. Metabolic Health Services, Inc., agrees to pay an amount equal to 60% of gross receipts generated by use of "ozone" equipment.

The debtor acknowledged that the generator was invoiced to him personally and delivered to his office. The debtor stated that Isotherapy paid $10,800.00 for the generator. The debtor's wife acknowledged that the money to purchase the ozone machine came from her Merrill Lynch account. The debtor testified that the ozone generator uses oxygen purchased by employees of Metabolic. The debtor also acknowledged that the manufacturer services the generator, not Isotherapy.

The debtor testified that in 1989, Isotherapy was paid $10,662.05 from the sale of supplements, $7,491.00 for the use of the ozone machine, and $8,400.00 for management fees for a total of $26,553.05. The debtor testified that during the first five months of 1990 Isotherapy was paid $38,735.00 for the contracts in question.

The debtor testified that Metabolic owned his personal vehicle and that he paid personal expenses directly out of Metabolic's bank account. In 1988 Metabolic issued checks to the debtor's wife totaling $16,000.00 which the debtor characterized as loans from Metabolic to himself. In 1989, the debtor caused Metabolic to issue checks directly to his wife totaling $52,750.00. The debtor treated these payments as loans from Metabolic to himself. Metabolic repaid the debtor's wife $15,000.00 for a loan she made to Metabolic. The debtor caused Metabolic to issue a check to Ocher Clearing, Inc., for $6,057.50 for the

purchase of stock which was titled in the debtor's wife's name. The debtor said he characterized this check as a loan from Metabolic to himself and a gift from himself to his wife. The total outstanding loans from Metabolic to the debtor were listed on the bankruptcy petition at $120,782.00. The debtor stated that loans from Metabolic to himself were initially characterized as loans, but were later characterized as dividends and reported as personal income. The debtor also testified that he is authorized to issue checks on Isotherapy's account.

The debtor's wife acknowledged that in 1989 she purchased in her own name, a house for $325,000.00. She stated that the mortgage payments are $2,700.00 per month. She acknowledged that in 1989 her income was only $37,107.00, but she said she had a net worth of $500,000.00.

Metabolic's 1988 income tax return reflected gross income of $256,132.00 and a net income of $98,177.00. Metabolic's 1989 income tax return reflected gross income of $389,322.00 and a net income of $95,522.00. The debtor's 1988 individual income tax return reflected total income of $263,477.00, including $23,122.00 from Metabolic and $4,925.00 from L. Haimes M.D., P.A. The debtor's petition listed total assets of $6,612.00 and liabilities of $1,253,998.29.

### DISCUSSION

■ 11 U.S.C. § 523(a)(1)(C) (1988) provides as follows:

> (a) A discharge under section 727.... of this title does not discharge an individual debtor from any debt—
>
> (1) for a tax or a customs duty—
>
> ....
>
> (C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax.

The IRS has the burden of proving that the debtor violated the provision of 11 U.S.C. § 523(a)(1)(C) (1988). *Kirk v. United States Dep't of Internal Revenue (In re Kirk)*, 98 B.R. 51 (Bankr.M.D.Fla.1989). The measure of proof for nondischargeability is preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

■ The IRS does not contend that any of the debtor's tax returns were fraudulent, but argues that the debtor wilfully attempted to evade or defeat his tax obligation. Section 523(a)(1) is broad enough to bar the discharge of a dischargeable tax debt if the debtor wilfully conceals assets. *See Irvine v. Commissioner of Internal Revenue Service (In re Irvine)*, 163 B.R. 983 (Bankr.E.D.Pa.1994); *Lewis v. United States Internal Revenue Service (In re Lewis)*, 151 B.R. 140 (Bankr.W.D.Tenn.1992); *United States v. Sumpter (In re Sumpter)*, 136 B.R. 690, 701 (Bankr.E.D.Mich.1991); *Jones v. United States (In re Jones)*, 116 B.R. 810, 814 (Bankr.D.Kan.1990). Proof of the debtor's conduct with specific intent to evade payment of taxes, is sufficient to bar a discharge under 11 U.S.C. § 523(a)(1)(C). *See Berzon v. United States (In re Berzon)*, 145 B.R. 247 (Bankr.N.D.Ill.1992).

■ Here, the evidence is convincing that the debtor wilfully attempted to evade paying taxes due to the IRS. The corporations created by the debtor and his wife are obvious shams created solely for the purpose of disguising income and concealing the debtor's assets. The contract for services between Metabolic and Isotherapy is illusory. The debtor's wife performed the duties of a part-time nurse's assistant, and in a legitimate business relationship, she would have been compensated accordingly. However, the debtor caused his sham corporation to pay his wife and her corporation unwarranted sums of money for routine services in order to avoid acquiring assets in his own name that could be seized to pay his tax liability.

Therefore, the debtor's tax liability for the years 1979 through 1984 is determined to be nondischargeable pursuant to 11 U.S.C. § 523(a)(1)(C). A separate judgment will be entered pursuant to Fed.R.Bankr.P. 7052.

IT IS SO ORDERED.