NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-4333
_____

RUSSELL P. SWIATEK; GEORGE MUNLEY;
MARVIN BARNETT,

Appellants

v.

BEMIS COMPANY, INC.; WARREN MARUCA,
individually and in his representative capacity


_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Civ. Action No. 3-08-06081)
District Judge: Honorable Anne E. Thompson
_____

Argued September 10, 2013
_____

Before: RENDELL, JORDAN, and GREENAWAY, JR., *Circuit Judges*.

(Opinion Filed:  October 17, 2013)

1

William J. Courtney, Esq. [Argued]
Law Offices of William J. Courtney
200 Main Street
P.O. Box 112
Flemington, NJ 08822

      *Counsel for Appellants*

David W. Garland, Esq. [Argued]
Epstein, Becker & Green
One Gateway Center
Newark, NJ 07102

      *Counsel for Appellee*

_____

OPINION

_____

GREENAWAY, JR., *Circuit Judge*.

George Munley, Marvin Barnett, and Russell Swiatek filed a complaint against their former employer, Bemis Company, Inc. ("Bemis" or "Appellee") asserting claims under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, and the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. § 10:5-1 *et seq.* Munley and Barnett (collectively "Appellants") appeal from the District Court's order.[1] The issues raised on appeal are whether the District Court properly granted Bemis's Rule 50(b) motion for judgment notwithstanding the verdict, whether the District Court

---

[1] The District Court had jurisdiction pursuant to 28 U.S.C. § 1331 and § 1367. We have appellate jurisdiction under 28 U.S.C. § 1291.

2

properly denied Barnett's motion to amend the complaint under Rule 15(b), and whether Barnett should be allowed to proceed with his appeal since he passed away after the notice of appeal was filed. For the reasons that follow, we will affirm in part and reverse in part.

## I. Background

Because we write primarily for the parties, we recount only the essential facts. Bemis is an international supplier of packaging and pressure sensitive materials with thirty-five plants and four distribution centers in the United States. In November 2007, the Flemington plant, where Appellants worked, executed a reduction-in-force ("RIF") whereby it terminated certain salaried employees to save money.

Munley, Barnett, and Swiatek sued Bemis because they were all terminated by the plant manager, Warren Maruca, after they took leave under the FMLA. They brought claims against Bemis under the FMLA for retaliation for taking FMLA leave and under NJLAD for age discrimination and discrimination based upon perceived disability and a hostile work environment. Barnett, who is African American, also alleged race discrimination under NJLAD.

The trial took place over the course of a week in late 2011. During jury deliberations, Barnett's counsel moved under Rule 15(b) to amend the complaint to include a claim of race retaliation under NJLAD. After trial, the jury returned its verdict,

3

finding in plaintiffs' favor on one of their ten claims: Munley's perceived disability claim under NJLAD. On November 1, 2011, after hearing from the parties, the District Court ruled from the bench on Bemis's Rule 50(b) motion (regarding Munley's perceived disability NJLAD claim) and Barnett's Rule 15(b) motion (regarding his attempt to add a claim for retaliation under NJLAD).

## II. Analysis

### A. Motion to Substitute Party

Under Article III of the Constitution of the United States, this Court's jurisdiction is limited to cases and controversies. *See Ortiz v. Dodge*, 126 F.3d 545, 551 (3d Cir. 1997). As a preliminary matter, therefore, we must address the question of substitution. Appellee argued that Appellant Barnett's appeals should be dismissed because Barnett had died and no personal representative had been substituted as a party to this appeal, as is required by Fed. R. App. P. 43(a)(1).[2] (Appellee Br. 26-27.) During oral argument, this Court requested post-argument supplementary letters pursuant to Fed. R. App. P. 28(j).

---

[2] Rule 43, which governs substitution of a party after a notice of appeal has been filed, provides that "[i]f a party dies after a notice of appeal has been filed or while a proceeding is pending in the court of appeals, the decedent's personal representative may be substituted as a party on motion filed with the circuit clerk by the representative or by any party." Fed. R. App. P. 43(a)(1).

Based on our review, we find that Barnett's son, Marvin Barnett, Jr., had taken the steps necessary to represent his father's estate. Rule 43 is silent as to who may be a "personal representative" of a decedent, and this Court may exercise discretion in determining whether sufficient conditions are met. *See Bennett v. Tucker*, 827 F.2d 63, 68 (7th Cir. 1987). A motion to substitute party pursuant to Fed. R. App. P. 43(a) was promptly filed by Appellants' counsel on July 10, 2013, and we are satisfied with the documentation corroborating the identity of the decedent's representative.

### B. Motion for Judgment Notwithstanding the Verdict

Appellants seek reversal of the District Court's decision to grant Bemis's motion for judgment notwithstanding the verdict. Our review of the District Court's grant of a Rule 50(b) motion is plenary. *Raiczyk v. Ocean Cnty. Veterinary Hosp.*, 377 F.3d 266, 269 (3d Cir. 2004). Viewing the evidence in the light most favorable to the non-moving party, such a judgment should only be granted if "'the record is critically deficient of that minimum quantity of evidence from which a jury might reasonably afford relief.'" *Id.* (quoting *Trabal v. Wells Fargo Armored Serv. Corp.*, 269 F.3d 243, 249 (3d Cir. 2001)).

NJLAD prohibits employment discrimination based on a disability or a perceived disability. N.J. Stat. Ann. § 10:5-4.1; *see Victor v. State*, 4 A.3d 126, 142 (N.J. 2010); *Myers v. AT & T*, 882 A.2d 961, 966 (N.J. Super. Ct. 2005). In order to plead a prima facie case of discrimination under NJLAD, a plaintiff must prove that 1) he was a

5

member of a protected class, 2) he was qualified for the job, 3) he was not hired or terminated, and 4) the position was filled with a person of similar qualifications. *See Viscik v. Fowler Equip. Co.*, 800 A.2d 826, 832-33 (N.J. 2002).

The District Court ruled that Munley had not proven a prima facie case of disability discrimination under NJLAD and also could not prove that the RIF was merely a pretext for his termination. The District Court noted that a prima facie case requires that the "plaintiff [ ] prove by a preponderance of the evidence (1) that he was perceived to be disabled [and] (2) that he was discharged under circumstances that prove that the perceived disability was a determinative factor in the termination." (App. 72 (Tr. 52:10-15).) The Court also concluded that Munley had failed to prove that the decision-maker who terminated him, Maruca, perceived him to be disabled. (App. 72.)

The District Court derived much of its reasoning from incidents that occurred after Munley returned to work after his knee surgery. Munley avoided walking more than half a mile a day, as his doctor had ordered, and asked Maruca if he could borrow a golf cart from the company's Indiana plant. Trial Tr. 141:9-142:2 (Oct. 24, 2011) (Munley). Maruca denied the request, telling Munley, "[N]o, you'll get too used to it." *Id.* at 143:20-21. Therefore, Munley began parking his car by the shipping office door, which was adjacent to his office. *Id.* at 144:13-25. After a couple of days, Maruca told Munley that he could not park in the closer space and had to park in his usual space in the main

6

parking lot. *Id.* Not long after the golf cart and parking lot incidents, Munley was terminated.

Viewing the evidence concerning Maruca's refusal to provide Munley with a golf cart as a "joking-type comment", the District Court found that this proved the *opposite* of what Munley claimed: that Maruca did *not* perceive him to be disabled. (App. 73 (Tr. 53:18-22).) The District Court also construed Maruca's refusal to provide Munley with a closer parking space as the behavior of a "hard driver, Type A personality." (App. 74 (Tr. 54:2-4).) The Court reasoned that if Maruca had perceived Munley to be disabled, he would not have denied his requests for the golf cart and closer parking space so flippantly. The District Court, finally, remarked that "[t]here simply [was] nothing else" in the record except evidence that Munley took FMLA leave, which was insufficient to prove a perceived disability. (App. 74 (Tr. 54:18).)

We find that there was sufficient evidence for a reasonable jury to conclude that Maruca perceived Munley as having a disability, and that the RIF was merely a pretext for terminating Munley because of the way his knee immobilized him. Under NJLAD, the burden of proving a prima facie case of disability discrimination is "rather modest" at most and should not be onerous. *Zive v. Stanley Roberts, Inc.*, 867 A.2d 1133, 1139 (N.J. 2005). Moreover, Rule 50(b) instructs that we draw all reasonable inferences in Munley's favor as the non-moving party. Those inferences compel a different result.

7

Although the District Court observed that Maruca was joking about denying Munley a closer parking space, Maruca, in his own testimony, stated that he seriously considered Munley's need for accommodation after his injury, which was why he offered several suggestions to help him out. Trial Tr. 87:11-23 (Oct. 26, 2011) (Maruca). To the same point, Maruca never said anything that would lead a reasonable juror to believe that he was joking and did not think that Munley's knee was causing him serious distress and impeding his ability to function at work — this was an assumption made by the District Court. The inference that Maruca perceived Munley as disabled would follow: Maruca thought that if Munley could not walk from his car to his office, then he was not fit to work at a plant that involved physically taxing work.

Also, based on this record a reasonable jury could conclude that the RIF was a pretext for Maruca's real reason for terminating Munley: his injured knee and the subsequent time off and accommodations that he requested. Testimony at trial both offered circumstantial evidence that Maruca intentionally discriminated against Munley due to his knee and cast doubt on Maruca's justifications for his actions. The testimony about Munley's golf cart request, his request to use a closer parking space, and the criteria for Maruca's decision to terminate Munley all could show that Maruca resented Munley because of his knee injury and wanted to terminate his employment, as a consequence.

Bemis, relying on *Gomez v. Allegheny Health Servs., Inc.*, 71 F.3d 1079 (3d Cir. 1995), contends that Ed Komoroski's comment – in which he "purportedly asked Munley why he had so many medical problems when other, older, employees did not" (Appellee's Br. 44) – should only be construed as a "stray remark[] by [a] non-decision maker[]" and cannot "support an inference of discrimination by the employer." *Gomez*, 71 F.3d at 1085. But *Gomez* is inapposite here. Komoroski's statement, though made by a "non-decision maker" and therefore perhaps insufficient on its own to support an inference of discrimination, is still relevant to demonstrating a general animus within Bemis towards those with disabilities and was made not by some random employee but rather by Maruca's second-in-command. If Maruca was willing to complain to the plant accountant about having to pay for sick and disability leave for employees who "do[] nothing" (App. 163 (Trial Tr. 76:22)), he may have shared his feelings with Komoroski regarding Munley's perceived disability. On the present record, Munley is entitled to have a jury consider that possibility in light of the other evidence. While we said in *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 545 (3d Cir. 1992), that "[s]tray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision[,]" that does not mean that every non-decisionmakers' comment is irrelevant. Unlike in *Ezold*, the stray remark here is not temporally remote and, given

9

the speaker's position, could fairly be considered with other evidence offered by Appellants to prove the alleged discrimination.

## C. Motion to Amend Complaint

Appellants also seek reversal of the District Court's ruling denying their motion to amend their complaint, pursuant to Fed. R. Civ. P. 15. We review the District Court's granting of leave to amend the complaint for an abuse of discretion. *Douglas v. Owens*, 50 F.3d 1226, 1235 (3d Cir. 1995).

When Appellants' counsel moved under Rule 15(b) to add a claim of race retaliation under NJLAD, the jury had already begun deliberating and the deadline for amending the complaint had long since passed. As Appellants' counsel admits, the impetus for amendment was a question posed by the jury during their deliberations: "If we determine Maruca made a racial comment, Barnett went to HR and Maruca was mad that Barnett to HR [sic] and fired him *in retaliation* for going to HR about racial comment [sic], is it sufficient to find for plaintiff Barnett on question #4?" (App. 116 (emphasis added).) Appellants believed that an amendment was necessary so that they could allow their complaint to "conform with the proofs". (Appellants' Br. 26.)

Rule 15(b) provides for the amendment of a complaint during and after trial under two circumstances. The first is when an objection requires that the complaint be amended in order to better facilitate the presentation of evidence on the merits of the

10

claims. Fed. R. Civ. P. 15(b)(1). The second is when the adverse party allows a claim to be tried by explicit or implicit consent. Fed. R. Civ. P. 15(b)(2); *see Douglas v. Owens*, 50 F.3d 1226, 1235-36 (3d Cir. 1995); *Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.*, 676 F.3d 318, 326-27 (3d Cir. 2012). The main consideration in determining whether leave to amend under Rule 15(b) should be granted is prejudice to the opposing party. *See United States v. Hougham*, 364 U.S. 310, 315 (1960).

Barnett does not fall within the first circumstance. There was no objection at trial which caused Barnett to move for leave to amend. The sole impetus for amendment was the question from the jury. Rule 15(b)'s exceptions are not written to accommodate such a situation and Barnett should not be allowed to let the jury raise claims for him that he could have raised himself. The evidence at trial showed that the questions raised by Appellants' counsel regarding Maruca's racially insensitive remarks did not support a retaliation theory. Appellants' theory was that Barnett's race, rather than his complaints to HR, motivated Maruca to terminate him.

The second circumstance does not apply here either because there was no explicit consent and there was no indication that Bemis implicitly consented. Implicit consent turns on three factors: whether Bemis recognized that the unpleaded claim had entered the case at trial, whether the evidence supporting the unpleaded claim was introduced at trial without objection, and whether a finding of trial by consent would prejudice Bemis. *See Douglas*, 50 F.3d at 1236. While the evidence of Barnett's complaint to HR and

11

Maruca's reaction was entered without objection at trial, the other two factors weigh heavily against amendment.  There is no indication that Bemis realized that Barnett was proceeding under a retaliation theory.  The evidence supporting a retaliation claim was extremely sparse, limited to the process followed by Barnett in reporting his complaint to HR and by Maruca in responding to it.  Moreover, there was no connection made between that evidence and Maruca's decision to terminate Barnett.  As a result, Barnett did not present a theory of retaliation in a cohesive and comprehensive manner.  Furthermore, as Bemis argues, if it had realized this, it would have prepared for and proceeded at trial much differently.  Therefore, the District Court properly denied the Rule 15(b) motion.

### III. Conclusion

For the foregoing reasons, we conclude that the District Court erred in granting Appellee's Rule 50(b) motion for judgment notwithstanding verdict.  We will therefore reverse and remand this matter to the District Court with instructions to  reinstate the jury verdict on Munley's perceived disability claim.  Finally, we will affirm the District Court's denial of the Rule 15(b) motion.