**INTREPID, Plaintiff–Appellant,**

v.

**Mamie E. POLLOCK, District Director of Customs, and the United States of America, Defendants–Appellees.**

No. 89–1468.

United States Court of Appeals, Federal Circuit.

June 29, 1990.

Dickson R. Loos, Holland & Knight, of Washington, D.C., argued for plaintiff-appellant. With him on the brief was William G. Bell, Holland & Knight, of Miami, Fla.

Velta A. Melnbrencis, Asst. Director, Commercial Litigation Branch, Dept. of Justice, of Washington, D.C., argued for defendants-appellees. With her on the brief were Stuart E. Schiffer, Acting Asst. Atty. Gen. and David M. Cohen, Director. Also on the brief were Wendell L. Willkie, II, General Counsel, Stephen J. Powell, Chief Counsel for Import Admin. and Tanya J. Potter, Attorney–Adviser, Office of the Chief Counsel for Import Admin., U.S. Dept. of Commerce, Washington, D.C., of counsel.

Before NIES, Chief Judge, SMITH, Senior Circuit Judge, and NEWMAN, Circuit Judge.

NIES, Chief Judge.

Intrepid appeals from the order of the United States Court of International Trade in *Intrepid v. Pollock*, 712 F.Supp. 212 (Ct. Int'l Trade 1989) (Tsoucalas, J.), denying its motions under 15(a) and (d) of the Rules of the Court of International Trade for leave to supplement and amend its complaint, and dismissing its action *sua sponte*. We reverse the rulings on the motions, vacate the judgment, and remand for proceedings on the merits.

I

Intrepid imported certain welded steel pipes (BS–1387) from Thailand into Puerto Rico between July 1987 and February 1988. Although not originally required on the July shipment, the International Trade Administration of the Department of Commerce (ITA) subsequently directed the United States Customs Service to suspend liquidation and to obtain cash deposits for estimated duties on such imports, pursuant to certain outstanding ITA antidumping and countervailing duty orders.[1] In February 1988, Intrepid made a request to the ITA for exclusion of its steel pipes from the scope of the antidumping duty order.

Before a ruling was made on its request to ITA, Intrepid commenced suit in the Court of International Trade on April 12, 1988, against the District Director of Customs and the United States asserting that the BS–1387 pipe was not within the scope

---

1. *Antidumping Duty Order; Circular Welded Carbon Steel Pipes and Tubes From Thailand,* 51 Fed.Reg. 8341 (Mar. 11, 1986). This order covers the same pipes and tubes as the *Final Affirm-* *ative Countervailing Duty Determination and Countervailing Duty Order; Certain Circular Welded Carbon Steel Pipes and Tubes From Thailand,* 50 Fed.Reg. 32,751 (Aug. 14, 1985).

of the outstanding orders; that the original orders did not adequately describe the class of investigated merchandise; that it had costed the merchandise on the basis of entry without duties which had not been required in July; and that it would be irreparably harmed if it had to deposit cash pending liquidation. Asserting jurisdiction under 28 U.S.C. § 1581(i) (1988), it sought to enjoin Customs from collecting cash deposits, as opposed to requiring a bond, for estimated duties pertaining to the imported steel pipes and such other relief as was just. Its motion for a temporary restraining order and a preliminary injunction was denied on April 15, 1988.

In early January 1989, the court requested a status report from the parties. The government responded that in the interim Customs did permit Intrepid to post a bond, rather than to deposit cash, covering the estimated duties and suggested that Intrepid's complaint should be dismissed because it had obtained all the relief it had sought in its complaint.

Meanwhile, on January 19, 1989, in response to Intrepid's pending request, the ITA ruled that the steel pipes Intrepid imported were within the scope of the outstanding antidumping duty order. A facsimile copy of that determination was received by Intrepid on January 23, 1989, whereupon, on February 2, 1989, within the time to appeal that determination, Intrepid moved to file an amended complaint (February complaint). The February complaint included allegations specifically directed to ITA's scope determination and sought to prohibit "[d]efendants from liquidating the subject entries pending appeal of the ITA determination." The court denied a motion for injunctive relief *pendente lite* and reserved ruling on the motion to amend.

Also in response to ITA's scope determination, Intrepid attempted to file an "administrative appeal" to the Secretary of Commerce, and was advised on March 10, 1989, that no such procedure existed. After offering amendments to the still-pending motion to file the February complaint, on May 1, 1989, Intrepid sought to substitute a second amended complaint (May complaint) as a replacement for all earlier pleadings. This pleading was the first to include all technical allegations against the ITA's scope determination including specifically naming ITA in the caption and alleging jurisdiction under 28 U.S.C. § 1581(c) (1988). The government opposed, contending that Intrepid could not amend its originally filed complaint to obtain review of ITA's scope determination but had to have filed a separate complaint within 30 days of that determination.

The trial court agreed with the government and dismissed the pending action *sua sponte.* As bases for its dismissal, the court stated that: (a) Intrepid's complaint as filed had been mooted by Customs' action in allowing Intrepid to post a bond; (b) Intrepid's complaint, filed nine months *before* notification of ITA's scope determination, could not cover ITA's scope determination because it was not filed within the time period specified in section 19 U.S.C. § 1516a(a)(2) (1988), *i.e.,* within 30 days *after* ITA's determination; (c) the February complaint was deficient; and (d) the May complaint which was correct in all respects was too late to meet the statutory time period. The court deemed Intrepid responsible for the harsh consequence of dismissal because it chose not to follow the statutory scheme of filing a *separate* complaint. In its discussion, the court found it significant that the jurisdictional allegation of the original complaint was 28 U.S.C. § 1581(i) whereas a complaint for review of a scope determination fell under 28 U.S.C. § 1581(c).

II

Rule 15 of the Court of International Trade which parallels that of the Federal Rules of Civil Procedure, provides in pertinent part:

**Rule 15. Amended and Supplemental Pleadings (a) Amendments.** A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been noticed for trial, the party may

so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires....

. . . . .

**(c) Relation Back of Amendments.** Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against the party to be brought in by amendment, that party (1) has received such notice of the institution of the action that [he] the party will not be prejudiced in maintaining a defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party. The delivery or mailing of the summons and complaint to the Attorney-in-Charge, International Trade Field Office, Commercial Litigation Branch, Department of Justice, or an agency or officer who would have been a proper defendant if named, satisfies the requirement of clauses (1) and (2) hereof with respect to the United States or any agency or officer thereof to be brought into the action as a defendant.

**(d) Supplemental Pleadings.** Upon motion of a party, the court may, upon reasonable notice and upon such terms as are just, permit the party to serve a supplemental pleadings setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented. Permission may be granted even though the original pleading is defective in its statements of a claim for relief or defense. If the court deems it advisable that the adverse party plead to the supplemental pleading, it shall so order, specifying the time therefor.

The Supreme Court, in an early ruling on the Federal Rules of Civil Procedure, stated that: "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley v. Gibson*, 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957) (involving the sufficiency of pleadings to give notice). In *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), the Court re-emphasized its view in the context of Rule 15, wherein it held that an appellate court erred in affirming a district court's denial of a motion to vacate a judgment of dismissal for purposes of supplementing and amending a complaint to state an alternative theory for recovery. In so doing it stated that the "mandate" of Rule 15(a), which declares that leave to amend " 'shall be freely given when justice so requires,' " "is to be heeded." 371 U.S. at 182, 83 S.Ct. at 230. The Court has consistently adhered to that view although it has repeatedly reminded that a trial court is required to take into account any prejudice to the opposing party which would result from allowing the amendment of the pleadings. *See, e.g., Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330–31, 91 S.Ct. 795, 802, 28 L.Ed.2d 77 (1971) (substantial prejudice found); *United States v. Hougham*, 364 U.S. 310, 316–17, 81 S.Ct. 13, 17–18, 5 L.Ed.2d 8 (1960) (no prejudice found). The Court expounded on that and other considerations in *Foman* stating:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment,

etc.—the leave sought should, as the rules require, be "freely given." 371 U.S. at 182, 83 S.Ct. at 230.

■■■ An appeal from the denial of a motion to file an amended or supplemental pleading invokes an abuse of discretion standard of review. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. at 330, 91 S.Ct. at 802 ("It is settled that the grant of leave to amend the pleadings ... is within the discretion of the trial court."). Notably absent from the court's opinion here, however, is any indication that the court was making a *discretionary* decision, in the sense that the court weighed considerations such as undue delay, prejudice to the opposing party and the like. Rather, the court rejected Intrepid's motions based on its conclusions that the various supplemental and amended pleadings were either too early or too late, or proffered impermissible changes. However, a misinterpretation of the Rule itself would constitute an abuse of discretion. *Kingsdown Medical Consultants, Ltd. v. Hollister, Inc.*, 863 F.2d 867, 876, 9 USPQ2d 1384, 1392 (Fed. Cir.1988), *cert. denied*, — U.S. —, 109 S.Ct. 2068, 104 L.Ed.2d 633 (1989). We conclude that none of the grounds, relied on by the court or any other urged by the government, provides a legally sound basis for denial of Intrepid's Rule 15 motions, and that such denial was, accordingly, an abuse of discretion.

### A

The trial court reasoned that Intrepid's *original* complaint could not have challenged the ITA's scope determination because it filed nine months *before* the ruling was made. However, that the count could not have been made in the original complaint is not a ground for refusing an amended or supplemental complaint. Rule 15(d) unequivocally allows supplementing a complaint with a count based on later events. Where the supplemental pleading with respect to such later events relates to the same cause of action originally pleaded, the Supreme court held, in *Griffin v. School Board*, 377 U.S. 218, 227, 84 S.Ct. 1226, 1231, 12 L.Ed.2d 256 (1964), that it

would be an abuse of discretion to deny the amendment. There the Court specifically stated that Fed.R.Civ.P. 15(d) "plainly permits supplemental amendments to cover events happening after suit, and ... persons participating in these new events may be added if necessary." In *Griffin*, the original complaint had challenged racial segregation in public schools. The amended or supplemental pleadings added new parties and relied on transactions, occurrences, and events which had happened since the action had begun. The Court explained that the amended complaint was not a new cause of action but merely part of the same old cause of action arising out of the continued desire of black students in Prince Edward County to have the same opportunity for state-supported education afforded white people. Similarly, a complaint may be amended where a new form of relief is being sought. *See, e.g., Foman*, 371 U.S. at 182, 83 S.Ct. at 230; *United States v. Hougham*, 364 U.S. at 316–17, 81 S.Ct. at 17–18.

■■■ Here, the motions to amend and supplement the pleadings pertain to an event (the ITA's scope determination) happening after suit. The government would have us believe that Intrepid's only objective in originally filing suit was to be relieved from the requirement for cash deposits covering estimated antidumping and countervailing duties upon its entries of pipes from Thailand. We disagree. Intrepid's averments in its original complaint specifically alleged that its particular kind of "imported pipe is not within the class or kind of merchandise" covered by the ITA's investigation and the resulting antidumping and countervailing duty orders. The later events are directly related to those averments which, indeed, were the basis for the particular relief sought *at that time*. The relief now sought matured because of subsequent events but is based on the same duty orders that prompted the complaint to be filed. Though admittedly the count is different from that in the original complaint, the supplemental and amended pleadings, under the *Griffin* analysis, are part of the same claim arising

out of the government's acts of subjecting Intrepid's pipe to the outstanding anti-dumping and countervailing duty orders. Thus, it is permitted under Rule 15(d). *See also LaSalvia v. United Dairymen of Arizona,* 804 F.2d 1113 (9th Cir.1986), *cert. denied,* 482 U.S. 928, 107 S.Ct. 3212, 96 L.Ed.2d 699 (1987); *William Inglis & Sons Baking Co. v. ITT Continental Baking Co.,* 668 F.2d 1014 (9th Cir.1981), *cert. denied,* 459 U.S. 825, 103 S.Ct. 57, 74 L.Ed.2d 61 (1982).

## B

■ Similarly, we do not agree that Intrepid's efforts to supplement the pleadings to cover the ITA's scope determination were too late. Allegations that the ITA improperly ruled on the scope determination first appeared in the timely February complaint well within the 30–day period for challenging ITA's decision. That those allegations were *imperfect* is not fatal to their meeting the statute of limitations. The deficiencies were corrected by the subsequent amendment which, under the provisions of Rule 15(c), relate back to the timely date of February 2, 1989. In *Tiller v. Atlantic Coast Line R.R.,* 323 U.S. 574, 581, 65 S.Ct. 421, 424, 89 L.Ed. 465 (1945), the Supreme Court held that: "There is no reason to apply a statute of limitations when, as here, the respondent has had notice from the beginning that petitioner was trying to enforce a claim against it...." That statement recognizes the interrelationship between a statute of limitations and Rule 15(c).

In *Snoqualmie Tribe of Indians v. United States,* 178 Ct.Cl. 570, 372 F.2d 951, 960 (1967), the Court of Claims further explained that interrelationship, holding:

A primary purpose of statutes of limitations is 'to ensure that parties are given formal and seasonable notice that a claim is being asserted against them;' it may be said of [Rule 15(c)[2]] that it 'is based on the idea that a party who is notified of

litigation concerning a given transaction or occurrence is entitled to no more protection from statutes of limitations than one who is informed of the precise legal description of the rights sought to be enforced.' Thus notice is the test, and it is built-into the rule's requirement that the amended pleading arise out of the same 'conduct, transaction, or occurrence.' In other words, the inquiry in a determination of whether a claim should relate back will focus on the notice given by the general fact situation set forth in the original pleading.

372 F.2d at 960 (cite and footnote omitted); *see also Vann v. United States,* 190 Ct.Cl. 546, 420 F.2d 968, 974 (1970) (test for "conduct, transaction, or occurrence" in Rule 15(c) is whether the general fact situation or the aggregate of the operative facts underlying the claim for relief in the first petition gave notice to the government of the new matter). We agree with Intrepid that, at the time of the February complaint, the government was on notice that Intrepid sought to contest the ITA's scope ruling. We disagree with the trial court and the government that the statute of limitations would have to be "tolled" to accept Intrepid's amended pleadings to the February complaint. All that is required is a straightforward application of Rule 15(c) and settled caselaw, of which Intrepid was deprived.

The government argues that the proposed amendments would completely restructure the original action including the allegation of the jurisdictional basis which provides for review of a scope determination. Again, we do not agree that these facts preclude an amendment to add the correct jurisdictional statement to the February complaint. *See International Ladies' Garment Workers' Union v. Donnelly Garment Co.,* 121 F.2d 561 (8th Cir. 1941) (Plaintiffs permitted to change entire jurisdictional basis from inapplicable Sherman Act to diversity of citizenship after *dismissal* of the first complaint).

**2.** The Indian Claims Commission had a rule 13(c), which as the opinion points out, is identical to rule 22(c) of the Rules of the Claims Court and rule 15(c) of the Federal Rules of Civil

Procedure. *Snoqualmie Tribe of Indians v. United States,* 178 Ct.Cl. 570, 372 F.2d 951, 960 (1967).

## C

Finally, we do not agree that the basic underlying dispute between Intrepid and the government has become moot, and, therefore, the complaint must be dismissed because of the absence of a "case" or "controversy," as required by Article III of the Constitution. *Allen v. Wright,* 468 U.S. 737, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). The "controversy" requirement has been described by the Supreme Court in *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937) as follows:

> A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

300 U.S. at 240–41, 57 S.Ct. at 464 (cases omitted). Mootness of an action relates to the basic dispute between the parties, not merely the relief requested. Thus, although subsequent acts may moot a request for particular relief or a count, the constitutional requirement of a case or controversy may be supplied by the availability of other relief. *Powell v. McCormack,* 395 U.S. 486, 496–97, 89 S.Ct. 1944, 1950–51, 23 L.Ed.2d 491 (1969) (the mootness of Powell's claim for injunctive relief related to his seating in Congress held not to moot the case because his claim for back salary remained a viable issue); *Standard Fashion Co. v. Magrane–Houston Co.,* 258 U.S. 346, 353, 42 S.Ct. 360, 361, 66 L.Ed. 653 (1922) (suit to restrain contract violation held not mooted with the contract's expiration if there is also a request for damages that is capable of ascertainment). As indicated, there remains a "definite and concrete" controversy between Intrepid and the government concerning the scope of the antidumping and countervailing duty orders which has existed since the inception of Intrepid's suit, continues to exist, and is capable of relief. That the government's action removed the need for the injunctive relief originally requested did not moot the entire action.

## III

### Conclusion

The government here failed to put forth any of the "apparent or declared reason[s]," such as bad faith or deleteriousness, identified in *Foman,* 371 U.S. at 182, 83 S.Ct. at 230, and particularly asserts no substantive prejudice to the government which might justify a denial of Intrepid's motions. Under such circumstances, and because we reject the bases on which the trial court relied in its opinion, we hold that the trial court abused its discretion in refusing to allow the supplemental and amended pleadings. Intrepid was not required to commence a new action to obtain review of ITA's scope determination. To impose such a requirement would violate the mandate that Rule 15 must be liberally construed to prevent loss of a claim where justice so requires.[3]

Accordingly, the judgment of the Court of International Trade dismissing Intrepid's complaint is vacated and the case is remanded for further proceedings.

## IV

### Costs

Costs are awarded to Intrepid.

**VACATED AND REMANDED.**

---

**3.** The government's argument that the change from Customs to ITA as the named agency of the United States is significant borders on the frivolous. The United States is the party and has been named from the beginning. Nor are we persuaded by the government's argument that a second summons was necessary when the government was already before the court in Intrepid's pending action. *See* Rule 3(d) of the Rules of the Court of International Trade.