THIS ORDER IS A PRECEDENT OF THE TTAB

**UNITED STATES PATENT AND TRADEMARK OFFICE**
**Trademark Trial and Appeal Board**
**P.O. Box 1451**
**Alexandria, VA 22313-1451**
General Contact Number: 571-272-8500
General Email: TTABInfo@uspto.gov

Ferrell

November 14, 2024

Cancellation No. 92082877

*Empresa Cubana del Tabaco d.b.a. Cubatabaco*

*v.*

*Kretek International, Inc.*

**By the Trademark Trial and Appeal Board:**

This proceeding now comes before the Board on Kretek International, Inc.'s ("Respondent") September 4, 2023 motion to dismiss one claim in Empresa Cubana del Tabaco d.b.a. Cubatabaco's ("Petitioner") petition for cancellation.[1] The motion is fully briefed.[2]

---

[1] 4 TTABVUE. Citations to the Board record refer to TTABVUE, the Board's online docketing system. *See Turdin v. Trilobite, Ltd.,* Conc. Use No. 94002505, 2014 TTAB LEXIS 17, at *6 n.6 (TTAB 2014). The number preceding "TTABVUE" corresponds to the docket entry number, and any number following "TTABVUE" refers to the page number of the docket entry where the cited materials appear.

The parties' future submissions, including trial briefs, motions, responses, and replies, should use citations to the TTABVUE record created throughout the proceeding and during trial to facilitate the Board's review of the evidence throughout the proceeding and at final hearing. *See Made in Nature, LLC v. Pharmavite LLC*, Opp. No. 91223352, 2022 TTAB LEXIS 228, at *40-41 (TTAB 2022); TBMP § 801.03.

[2] 15, 16 TTABVUE (Petitioner's confidential and redacted response, respectively); 17 TTABVUE (Respondent's reply in support of its motion). This order will generally cite to Petitioner's redacted response at 16 TTABVUE.

## I.    Relevant Background

Respondent is the record owner of Registration Nos. 6380838 and 6380839 for the

marks



and                                        ,

respectively, each for use in connection with "Cigars" in International Class 34

("Respondent's Registrations").[3]

Petitioner filed this petition for cancellation on July 26, 2023, alleging the

following claims:[4] (1) likelihood of confusion pursuant to Trademark Act Section 2(d),

---

[3] The underlying applications were each filed on March 14, 2019, and the registrations each issued on the Principal Register on June 8, 2021, pursuant to Trademark Act Section 1(a), 15 U.S.C. § 1051(a), with a claimed date of first use anywhere and first use in commerce of September 14, 2005. Color is not claimed as a feature of either mark.

For Registration No. 6380838, the description of the mark reads as follows: "[t]he mark consists of two horizontal bands. The top band contains a pattern of equally-spaced circles in a contrasting color. The bottom band is divided into three parts. The left-most part is a shaded band with a thin light-colored border above and below. The middle part is a light-colored band with a thin dark-colored border on all sides. The right-most part is a shaded band with a thin light-colored border above and below. The middle part of the bottom band is the longest, with the left-most part almost as long, and the right-most part significantly shorter."

For Registration No. 6380839, the description of the mark reads as follows: "[t]he mark consists of three horizontal bands. The top band contains a pattern of equally-spaced circles in a contrasting color. The middle band is divided into three parts. The left-most part is a shaded band with a thin light-colored border above and below. The middle part is a light-colored band with a thin dark-colored border on all sides. The right-most part is a shaded band with a thin light-colored border above and below. The middle part of the middle band is the longest, with the left-most part almost as long, and the right-most part significantly shorter. The bottom band is a solid, darker color."

[4] Petitioner is reminded that, with the exception of status and title documents of a plaintiff's pleaded registration, exhibits attached to a pleading are not evidence for purpose of summary judgment or trial. TBMP § 317 and authorities cited therein. To be considered at final hearing, any such evidence must be properly introduced during the appropriate trial period. *See, e.g., Levi Strauss & Co. v. R. Joseph Sportswear Inc.*, Opp. No. 91081072, 1993 TTAB

15 U.S.C. § 1052(d); and (2) violation of Article 8 of the General Inter-American Convention for Trademark and Commercial Protection of Washington, 1929 ("Pan-American Convention") (Petitioner's "Article 8 Claim").[5] In support of its claims and entitlement to a statutory cause of action, Petitioner alleges that it owns (1) Registration Nos. 2145804,[6] 3402158,[7] and 4244461[8] for the marks

LEXIS 22 (TTAB 1993); TBMP § 528.05(a). Citations in this order are in the form recommended in Trademark Trial and Appeal Board Manual of Procedure (TBMP) § 101.03 (2024). This order cites decisions of the U.S. Court of Appeals for the Federal Circuit and the U.S. Court of Customs and Patent Appeals by the page(s) on which they appear in the Federal Reporter (e.g., F.2d, F.3d, or F.4th). For decisions of the Board, this order employs citations to the LEXIS legal database. Practitioners should also adhere to the practice set forth in TBMP § 101.03.

[5] 1 TTABVUE 9-11. The United States ("U.S.") and Cuba are parties to the Pan-American Convention, which is self-executing. U.S. Dep't of State, Treaties in Force 534 (2020); *British-American Tobacco Co. v. Philip Morris*, Can. No. 92026549, 2000 TTAB LEXIS 390, at *14-15 (TTAB 2000) ("The Pan American Convention is self-executing and independent of the Lanham Act.").

[6] The underlying application for Registration No. 2145804 was filed on August 16, 1996, and the registration issued on the Principal Register on March 24, 1998, pursuant to Trademark Act Section 44(e), 15 U.S.C. § 1126(e). The registration was most recently renewed on July 18, 2017. The mark is lined for the color gold. The description of the mark reads as follows: "The boldly lined section of the drawing, however, does not indicate color, but is a feature of the mark. The mark consists of a rectangular design with rounded corners, a gold outline, the silhouette of a head of an Indian against a black and white dotted background, a white rectangle, and a gold rectangle."

[7] The underlying application for Registration No. 3402158 was filed on December 18, 2006, and the registration issued on the Principal Register on March 25, 2008, pursuant to Trademark Act Section 66(a), 15 U.S.C. § 1141f(a). The registration was most recently renewed on June 15, 2017. The colors gold, black, white, yellowish orange are claimed as a feature of the mark. The description of the mark reads as follows: "The mark consists of a rectangular shape with curved corners, outlined in gold. The top half is black with white dots, and contains the silhouette of a head of an Indian in gold, outlined in white. The bottom half is in yellowish orange, and contains the word 'ESPLENDIDOS' in black. The rectangle is divided in half with a gold line, and a white rectangle in the center of the mark." The English translation of "ESPLENDIDOS" in the mark is "Splendid."

[8] The underlying application for Registration No. 4244461 was filed on September 6, 2011, and the registration issued on the Principal Register on November 20, 2012, pursuant to Section 44(e). The registration most recently renewed on July 19, 2022. The colors white, black, gold and yellowish orange are claimed as a feature of the mark. "The mark consists of



, and

, respectively, each for use in connection with "Cigars" and other smoker's articles in International Class 34 ("Petitioner's Registrations") and (2) application Serial No. 98086821[9] for the mark



for use in connection with "Cigars" and other smoker's articles in International Class 34 ("Petitioner's Application").[10] Petitioner further alleges that it "has been damaged" and "will be damaged" by registration of Respondent's trademarks.[11] Additionally,

---

a rectangle the top half of which is black with white dots, and contains the silhouette of a head of an Indian in gold, outlined in white. The bottom half is in yellowish orange, and contains the number '1966' in black. The rectangle is divided in half with a gold line." "1966" is disclaimed.

[9] The application was filed on July 15, 2023, pursuant to Section 44(e). The colors orange, black, and white are claimed as a feature of the mark. The description of the mark reads as follows: "The mark consists of two horizontal bands. The top band contains 4 rows of a pattern of equally-spaced white squares against a black background, with a white rectangle in between the second through fourth rows. The middle part of these three rows is the longest, with the left-most part longer than the right-most part. The white rectangle protrudes slightly into the bottom band. The bottom band is orange, with the words 'La Habana, Cuba' in a stylized type face below the white rectangle." "LA HABANA, CUBA" is disclaimed.

[10] 1 TTABVUE 2-7.

[11] *Id.* at 4, 9.

Petitioner alleges that it is a state corporation organized in the Republic of Cuba with its principal place of business in Havana, Cuba.[12]

On September 4, 2023, in lieu of filing an answer, Respondent filed its motion under Fed. R. Civ. P. 12(b)(6), alleging that Petitioner has failed to state an Article 8 claim upon which relief may be granted.[13]

Thereafter, the parties stipulated to suspension of the proceeding pending settlement negotiations through December 20, 2023, and then further stipulated to suspension of the proceeding pending the Trademark Examining Attorney's initial review of Petitioner's Application which was filed on July 15, 2023, just prior to the petition for cancellation.[14]

On May 10, 2024, Petitioner filed its notice to inform the Board that the Examining Attorney suspended Petitioner's Application pending, inter alia, resolution of the instant cancellation proceeding involving "a registered mark that conflicts with applicant's mark under Trademark Act Section 2(d)."[15]

Thereafter, the Board gave Petitioner twenty days to respond to Respondent's motion to dismiss, which Petitioner did on June 6, 2024.[16]

---

[12] *Id.* at 4-5.

[13] 4 TTABVUE.

[14] *See* 7-12 TTABVUE.

[15] 13 TTABVUE 2.

[16] 14 TTABVUE (Board's order); 16 TTABVUE.

## II.     Legal Standard

### A. Motion to Dismiss

To state a claim upon which relief may be granted, Petitioner need only allege such facts which, if proven, would establish that: (1) it is entitled to a statutory cause of action under Trademark Act Section 14, 15 U.S.C. § 1064;[17] and (2) a valid ground exists for cancelling a registration. *See Doyle v. Al Johnson's Swedish Rest. & Butik Inc.*, Can. No. 92054059, 2012 TTAB LEXIS 30, at \*4 (TTAB 2012); *IdeasOne, Inc. v. Nationwide Better Health, Inc.*, Can. No. 92049636, 2009 TTAB LEXIS 86, at \*3 (TTAB 2009).

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The claimant must allege well-pleaded factual matter and more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

In reviewing a complaint, all well-pleaded material allegations are accepted as true and construed in favor of the complaining party. *See, e.g., Ritchie v. Simpson*, 170 F.3d 1092, 1097 (Fed. Cir. 1999); *Advanced Cardiovascular Sys. Inc. v. SciMed Life Sys. Inc.*, 988 F.2d 1157, 1160-61 (Fed. Cir. 1993); *Doyle*, 2012 TTAB LEXIS 30,

---

[17] Board decisions previously analyzed the requirements of Sections 13 and 14 of the Trademark Act, 15 U.S.C. §§ 1063-64, under the rubric of "standing." Despite the change in nomenclature, the Board's prior decisions and those of the Court of Appeals for the Federal Circuit interpreting Sections 13 and 14 remain applicable. *See Spanishtown Enters., Inc. v. Transcend Res., Inc.*, Can. No. 92070340, 2020 TTAB LEXIS 481, at \*2-5 (TTAB 2020).

at *5. A motion to dismiss under Fed. R. Civ. P. 12(b)(6) must challenge the legal theory of the complaint, and not rely on anticipated insufficiency of the evidence or assertions that extrinsic evidence would prevent the plaintiff from proving its claims. *See, e.g., Advanced Cardiovascular*, 988 F.2d at 1160; *Libertyville Saddle Shop Inc. v. E. Jeffries & Sons Ltd.*, Can. No. 92019719, 1992 TTAB LEXIS 1 (TTAB 1992); *see also* TBMP §§ 503.01, 503.02.

### B. Article 8 of the Pan-American Convention

Article 8 of the Pan-American Convention states, in relevant part, as follows:

> When the owner of a mark seeks the registration . . . of the mark in a Contracting State other than that of origin of the mark **and such registration . . . is refused** because of the previous registration . . . of an interfering mark, he shall have the right to apply for and obtain the cancellation or annulment of the interfering mark upon proving, in accordance with the legal procedure of the country in which cancellation is sought, the stipulations in Paragraph (a) and those of either Paragraph (b) or (c) below:
>
> (a)    That he enjoyed legal protection for his mark in another of the Contracting States prior to the date of the application for the registration . . . which he seeks to cancel; and
>
> (b)    That the claimant of the interfering mark, the cancellation of which is sought, had knowledge of the use, employment, registration or deposit in any of the Contracting States of the mark for the specific goods to which said interfering mark is applied, prior to adoption and use thereof or prior to the filing of the application or deposit of the mark which is sought to be cancelled; . . . .

46 Stat. 2907 (emphasis added).

## III. The Parties' Arguments

Respondent bases its motion to dismiss on two grounds: (1) Petitioner's Article 8 Claim is not supported by a sufficient factual basis as to Respondent's knowledge of

the "use, employment, and/or registration" of Petitioner's mark as used in association with its pleaded goods prior to Respondent's use and adoption of its marks or prior to its filing of the underlying applications for Respondent's Registrations; and (2) Petitioner's claim is premature because the Examining Attorney has not cited Respondent's Registrations as grounds for refusal of Petitioner's Application under Section 2(d) of the Trademark Act.[18]

Petitioner argues that it has alleged a sufficient factual basis for its Article 8 Claim and that its claim is not premature.[19] In particular, as to Respondent's second basis, Petitioner argues that while at the time it filed the petition for cancellation Petitioner's Application had not yet been reviewed by the Examining Attorney, it has now been reviewed, and the Examining Attorney suspended Petitioner's Application pending, inter alia, resolution of the instant cancellation proceeding.[20]

In reply, Respondent argues, inter alia, that the suspension of Petitioner's Application is not sufficient to trigger Article 8 of the Pan-American Convention because the application has not been refused.[21]

---

[18] 4 TTABVUE 3-4.

[19] 16 TTABVUE 3-5.

[20] *Id.* at 4. It would have been the better practice for Petitioner to file, concurrently with its May 10, 2024 notice that its application had been suspended based on the potential Section 2(d) refusal, a supplemental pleading alleging that fact.

[21] 17 TTABVUE 6-9.

## IV.    Analysis

### A. Whether claims under Article 8 of the Pan-American Convention may be brought when plaintiff's pleaded application is suspended via examination.

The issue is whether Petitioner's Application has been "refused" because of Respondent's Registrations, as defined in the Preamble of Article 8 of the Pan-American Convention ("Article 8 Preamble").

"Assuming the plaintiff meets the initial requirements of Article 8 [of the Pan-American Convention] . . . an action to cancel a trademark registration may be brought under that article by making the allegations set forth in subsection 8(a) and either 8(b) or 8(c) of the Article." *Lacteos De Honduras S.A. v. Industrias Sula, S. De R.L. De C.V.*, Opp. No. 91243095, 2020 TTAB LEXIS 13, at \*7-8 (TTAB 2020) (citing *Brit.-Am. Tobacco Co. v. Philip Morris Inc.*, Can. No. 92026549, 2000 TTAB LEXIS 390, at \*6-18 (TTAB 2000)). It is well-settled that "[w]e construe Article 8 of the [Pan-American] Convention in accordance with the ordinary meaning of its terms." *Id.* at \*7 (citing *Diaz v. Servicios De Franquicia Pardo's S.A.C.*, Opp. No. 91159871, 2007 TTAB LEXIS 34, at \*14 (TTAB 2007)).

The Board in *Lacteos* considered whether a counter-claimant in an opposition proceeding sufficiently set forth a claim upon which relief can be granted under Article 8 of the Pan-American Convention. *See generally id.* In particular, the Board determined whether an applicant's "counterclaim is available under the requirement set forth in the Preamble of Article 8 [of the Pan-American Convention] and whether its pleading otherwise sets forth allegations sufficient to meet the requirements of

subsections (a) and (b) of that Article." *Id.* at *9. The Board recognized that "the provision requiring that registration of the mark owned by the potential counterclaimant 'is refused' is not limited by the word 'examination.'" *Id.* at *10. Accordingly, the Board held that

> the requirement in the Article 8 Preamble, i.e., for a refusal of registration in order to invoke the right to apply for and obtain a cancellation of the interfering mark, includes not only a refusal resulting from ex parte examination by the United States Patent and Trademark Office [("USPTO")], but also **the potential for refusal** resulting from the institution of an opposition proceeding before the Board, which determines registrability of a trademark.

*Id.* at *10-11 (emphasis original) (internal citations omitted). In other words, where a plaintiff—the opposer—brings an opposition proceeding based on a likelihood of confusion with its pleaded registrations against an application, the defendant in that proceeding—the applicant—can invoke Article 8 of the Pan-American Convention in a counterclaim against the pleaded opposer's registration(s) due to the potential for refusal of the applicant's application for registration should the opposition succeed. *See id.*

In this case, the issue is analogous to that in *Lacteos*, namely, whether Petitioner's claim is available under the requirement set forth in the Article 8 Preamble that the registration of Petitioner's mark be **refused** because of Respondent's Registrations. Here, Petitioner's Application was not reviewed by the USPTO until after the cancellation proceeding commenced. In the suspension Office Action, the Examining Attorney suspended Petitioner's Application pending disposition of the instant cancellation because it "involves (1) a registered mark that conflicts with

10

[Petitioner]'s mark under Trademark Act Section 2(d) . . . and/or (3) the registrability of [Petitioner]'s mark." U.S. Serial No. 98086821, Suspension Notice, March 18, 2024, at TSDR 1 (citing 15 U.S.C. § 1052, 37 C.F.R. § 2.83, and TRADEMARK MANUAL OF EXAMINING PROCEDURE ("TMEP") §§ 716.02(a), (c)-(d), 1208 *et seq.* (May 2024)).[22] Additionally, the Examining Attorney stated that "[b]ecause the outcome of this proceeding[] could directly affect whether [Petitioner]'s mark can register, action on this application is suspended until the proceeding[] is resolved." *Id.* (citing 37 C.F.R. § 2.67 and TMEP §§ 716.02(a), (c)-(d)).

As the Board recognized in *Lacteos*, the Article 8 Preamble requiring that the registration of Petitioner's mark "is refused" does not specifically define that phrase and, as construed by the Board, includes "the potential for refusal." *See Lacteos*, 2020 TTAB LEXIS 13, at *10-11. Building on *Lacteos*, where "the potential for refusal" is sufficient to bring a counterclaim for cancellation, we now hold that where a Trademark Examining Attorney suspends prosecution of a plaintiff's application for registration pending the disposition of a legal proceeding involving plaintiff's likelihood of confusion claim against a defendant's registration that has been identified as presenting a bar to registration of the plaintiff's mark, the requirement in the Article 8 Preamble for "the potential for refusal" is satisfied.

---

[22] Citations to the examination record refer to the USPTO's online Trademark Status and Document Retrieval system ("TSDR"), by page number.

### B. Whether Petitioner states a claim under Article 8(a) and (b) of the Pan-American Convention for which relief can be granted

Turning to the specific allegations supporting Petitioner's Article 8 Claim, Petitioner must allege that: (1) it seeks registration in the U.S. of a mark which originated in another Contracting State; (2) during ex parte examination by the USPTO, registration to Petitioner has either been refused or the Examining Attorney has identified a potential for refusal because of Respondent's Registrations; (3) Petitioner enjoyed legal protection for its mark in another Contracting State prior to the date of Respondent's applications for Respondent's Registrations; and (4) Respondent had knowledge of the use or registration in any of the Contracting States of Petitioner's mark for the identical goods to which Respondent's marks are applied, prior to adoption and use of Respondent's marks or prior to the filing of Respondent's applications for Respondent's Registrations. *See Lacteos*, 2020 TTAB LEXIS 13, at *12-13.

For its Article 8 Claim, Petitioner alleges, inter alia, as follows:

10. On July 15, 2023, [Petitioner] filed an application in the USPTO for [its] mark, pursuant to Section 44(e) of the Trademark Act, based on its Cuban registration, for "Ashtrays; Cigarettes; Cigars; Humidors; Matches; Tobacco; Match boxes; Smokeless tobacco; Chewing tobacco; Smoking tobacco," assigned Serial No. 98086821.

11. [Petitioner's m]ark has been registered to [Petitioner] in Cuba since January 22, 2001, and has been twice renewed.

12. [Petitioner's m]ark has been used in Cuba and throughout the world, with the exception of the United States, since at least 2001 in connection with the world famous Cuban COHIBA cigar, and [the mark] one of the most recognizable cigar bands in the world.

. . . .

18. Respondent's . . . [m]arks are a blatant and obvious copying of [Petitioner]'s instantly recognizable . . . [m]ark . . . .

22. On April 24, Respondent filed Statements of Use for both applications, and submitted the same specimen – a cigar band with three rectangular bands, which copied the black and white checkerboard and colors of [Petitioner's m]ark, and included two references to Cuba for Respondent's non-Cuban origin cigars – "Cuban Rounds" and "Taste of Havana," . . . .

25. Respondent's . . . [m]arks blatantly and obviously copy . . . [Petitioner's m]ark to capitalize upon and to exploit the fame and instant recognizability among U.S. cigar consumers of the famous designs used with the renowned COHIBA cigars.

. . . .

31. The United States and Cuba are both parties to the [Pan-American Convention].

. . . .

33. Because [Petitioner's m]ark is almost identical to Respondent's registered . . . [m]arks, [Respondent's R]egistrations are certain to interfere with [Petitioner's Application].

34. Because of the virtual certainty that Respondent's almost identical . . . [m]arks will interfere with the registration of [Petitioner's Application], and in the interest of efficiency of proceedings, [Petitioner] brings this Article 8 [Pan-American Convention] ground for cancellation together with its section 2(d) ground, rather than commence a second proceeding once registration is refused.

35. [Petitioner] enjoyed legal protection of [its m]ark in Cuba at least as early as 2001, prior to Respondent's applications in 2019 [for Respondent's Registrations].

36. Respondent had knowledge of the use, employment, and/or registration in Cuba of [Petitioner's m]ark for cigars, prior to Respondent's adoption and use of its . . . [m]arks, and prior to [Respondent's] filing of the . . . applications [for Respondent's Registrations].[23]

---

[23] 1 TTABVUE 7-11.

With respect to elements (1), (3), and (4), discussed above, construing Petitioner's allegations so as to do justice in accordance with Fed. R. Civ. P. 8(e), the Board finds that Petitioner sufficiently pleads a factual basis to state a claim. In particular, with respect to element (4), contrary to Respondent's arguments, Petitioner's allegations that Respondent's marks "are a blatant and obvious copying of" Petitioner's mark and that Respondent has done this "to capitalize upon and to exploit the fame and instant recognizability among U.S. cigar consumers of the famous designs used with the renowned COHIBA cigars" constitute a sufficient factual basis for Petitioner's allegation that Respondent had knowledge of the use or registration of Petitioner's mark in Cuba for cigars prior to Respondent's use and/or filing of Respondent's applications for Respondent's Registrations. Respondent's arguments to the contrary go to the merits of the underlying claim and are not appropriate for a motion to dismiss, which is a test solely of the sufficiency of the pleading. *See Covidien LP v. Masimo Corp.*, Can. No. 92057336, 2014 TTAB LEXIS 31, at *4 n.3 (TTAB 2017).

However, with respect to element (2), as discussed, at the time Petitioner filed its petition for cancellation, the USPTO had not yet examined Petitioner's Application and issued the advisory that its Application may be refused registration in light of Respondent's Registrations, and so the petition did not include the required allegation that registration to Petitioner has either been refused or the Examining

Attorney has identified a potential for refusal because of Respondent's Registrations.[24]

In view of the foregoing, Petitioner's allegations fail to state a claim under Article 8 of the Pan-American Convention. Accordingly, Respondent's motion to dismiss Petitioner's Article 8 Claim is **granted**, and the Article 8 Claim is **dismissed without prejudice**.[25]

## V.    Summary

Respondent's motion to dismiss Petitioner's Article 8 Claim is **granted**.

Notwithstanding the foregoing, the Board freely grants leave to amend or supplement pleadings found to be insufficient under Fed. R. Civ. P. 12(b)(6). *See IdeasOne*, 2009 TTAB LEXIS 86, at *9; *Miller Brewing Co. v. Anheuser-Busch Inc.*, Opp. No. 91088487, 1993 TTAB LEXIS 30, at *13 (TTAB 1993); *see also Intrepid v. Pollock*, 907 F.2d 1125, 1129 (Fed. Cir. 1990) ("Rule 15(d) unequivocally allows supplementing a complaint with a count based on later events."); *Topco Holdings, Inc. v. Hand 2 Hand Indus., LLC*, Opp. No. 91267988, 2022 TTAB LEXIS 3, at *6-7 (TTAB 2022) ("In determining whether to grant leave to supplement a pleading under Fed. R. Civ. P. 15(d), tribunals, including the Board, use the same analysis utilized in deciding whether to grant leave to amend under Fed. R. Civ. P. 15(a)."). In view thereof, Petitioner is allowed until **December 4, 2024**, to file and serve a

---

[24] *See id.* at 11 ¶34. Petitioner does not dispute that registration of Petitioner's Application had not yet been refused at the time it filed the petition for cancellation. *Id.*

[25] Respondent's motion did not challenge Petitioner's entitlement to a statutory cause of action or Petitioner's Section 2(d) claim.

supplemented petition for cancellation that properly pleads a claim under Article 8 of the Pan-American Convention including the allegation that the Examining Attorney has identified a potential for refusal because of Respondent's Registrations, if it has a good faith basis for doing so, failing which the original petition for cancellation will proceed on the Section 2(d) claim only.

In turn, Respondent has until **January 3, 2025**, to serve and file an answer to the supplemented petition for cancellation, if one is filed; or, in the event Petitioner fails to file a supplemented pleading by the deadline set forth herein, to file and serve an answer to the original petition for cancellation as limited by this order.

## VI.   Proceedings Resumed; Dates Reset

Proceedings are **resumed**. Dates are reset as follows:

| | |
|---|---|
| **Time to Answer** | **1/3/2025** |
| **Deadline for Discovery Conference** | **2/2/2025** |
| **Discovery Opens** | **2/2/2025** |
| **Initial Disclosures Due** | **3/4/2025** |
| **Expert Disclosures Due** | **7/2/2025** |
| **Discovery Closes** | **8/1/2025** |
| **Plaintiff's Pretrial Disclosures Due** | **9/15/2025** |
| **Plaintiff's 30-day Trial Period Ends** | **10/30/2025** |
| **Defendant's Pretrial Disclosures Due** | **11/14/2025** |
| **Defendant's 30-day Trial Period Ends** | **12/29/2025** |
| **Plaintiff's Rebuttal Disclosures Due** | **1/13/2026** |
| **Plaintiff's 15-day Rebuttal Period Ends** | **2/12/2026** |
| **Plaintiff's Opening Brief Due** | **4/13/2026** |
| **Defendant's Brief Due** | **5/13/2026** |
| **Plaintiff's Reply Brief Due** | **5/28/2026** |
| **Request for Oral Hearing (optional) Due** | **6/7/2026** |

**IMPORTANT TRIAL AND BRIEFING INSTRUCTIONS**

Generally, the Federal Rules of Evidence apply to Board trials. Trial testimony is taken and introduced out of the presence of the Board during the assigned testimony periods. The parties may stipulate to a wide variety of matters, and many requirements relevant to the trial phase of Board proceedings are set forth in Trademark Rules 2.121 through 2.125, 37 C.F.R. §§ 2.121-2.125. These include pretrial disclosures, the manner and timing of taking testimony, matters in evidence, and the procedures for submitting and serving testimony and other evidence, including affidavits, declarations, deposition transcripts and stipulated evidence. Trial briefs shall be submitted in accordance with Trademark Rules 2.128(a) and (b), 37 C.F.R. §§ 2.128(a) and (b). Such briefs should utilize citations to the TTABVUE record created during trial, to facilitate the Board's review of the evidence at final hearing. *See* TBMP § 801.03. Oral argument at final hearing will be scheduled only upon the timely submission of a separate notice as allowed by Trademark Rule 2.129(a), 37 C.F.R. § 2.129(a).